**John JOHNSON, D/B/A Johnson's Foods, Appellant,**

**v.**

**CITY OF AUSTIN, et al., Appellees.**

**No. 14092.**

Court of Appeals of Texas, Austin.

July 5, 1984.

John Moore, Malcolm Greenstein, Greenstein & Kolker, Austin, for appellant.

Jonathan Davis, Acting City Atty., George Walter McCool, Asst. City Atty., Austin, for appellees.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

POWERS, Justice.

John Johnson appeals from an interlocutory order of the district court denying his application for an injunction *pendente lite.* We will reverse the order and remand the cause to the trial court as explained below.

Johnson's application for an injunction *pendente lite* formed part of his first amended original petition in a suit against the City of Austin and various City officials. The petition states the basic controversy between Johnson and the City: Johnson possessed three licenses issued by the City. The licenses authorized him to sell hot dogs from portable vending stands at specified locations on a city street and within specified hours. Johnson tendered to the City specified annual sums required to avoid the expiration of his licenses. The City refused to accept the tender on the ground that Johnson's continued operation of the three stands, in the same manner as before, would not be in conformance with pertinent new guidelines issued by the City's Urban Transportation Department. Alleging that under the license instruments the City was legally bound to accept his tender, and alleging that the guidelines were invalid for a variety of reasons, Johnson prayed in his petition for declaratory relief, permanent injunctive relief, money damages, and attorney's fees.

Johnson's petition alleges that he will suffer economic harm if deprived of the authority represented by the three licenses, it being unlawful under city ordinance for him to conduct sales from his portable stands, in the street, without such official authority. While his petition seeks a temporary injunction against enforcement of the City's new guidelines, based on a claim of their invalidity, his allegations may also be interpreted as requesting such injunctive relief on the ground that under the license instruments his tender was sufficient to maintain his licenses in force, leaving the new guidelines to be enforced in a proceeding aimed at revocation of the licenses, as contemplated in another section of the license instruments.[1]

---

1. The licenses are essentially identical in their terms save for the locations specified for the stands and the annual fees required to prevent

Johnson argues that the City was, by the terms of section II of the license instruments, required to accept the sums tendered by him in order to avoid termination of the authority represented by the instruments. This is so, according to Johnson, because section II imposes only the requirement that he pay the annual fee, and no other qualification or condition, in order to maintain his licenses in force. *Murphy v. Mittelstadt*, 145 Tex. 451, 199 S.W.2d 478 (1947). Having made the tender, his licenses did not lapse by reason of the City's refusal to accept the tender. *State v. Cortez*, 160 Tex. 532, 333 S.W.2d 839 (1960). Injunction would be a proper remedy to protect his right to operate under the official authority represented by the license instruments. *House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654 (Tex.1965).

The City replies with arguments along the following lines. Johnson's interpretation of section II of the license instruments, dealing with payment of the annual fee in order to avoid expiration of the official authority, would make that authority tantamount to a "franchise." The creation of a franchise is void under the City's charter unless it be created by ordinance, which was not done here. Moreover, Johnson's interpretation would convert the license given him into a vested property right in the City's street or result in the City's surrender of its governmental powers, rendering the licenses void on these additional grounds. *Clear Lake City Water Auth. v.*

expiration of the authority granted. The instruments provide as follows:

That the City of Austin, hereinafter referred to as "Licensor", acting through the City Manager who is empowered by ordinance of the City Council, in consideration of the agreements made herein by John Johnson ... hereinafter referred to as "Licensee", hereby grants a license to the said Licensee to permit the encroachment of a vending stand for the purposes of selling food into the public right-of-way at [locations specified], subject to the following terms and conditions: [hours of operation specified and daily cleaning of the area required].

I.

Licensee acknowledges that the area covered by this license constitutes a portion of a public right-of-way and agrees that [the] use herein permitted shall be done in compliance with police, traffic, fire, building and health regulations of the City of Austin now existing or hereafter adopted.

II.

Licensee agrees to pay the application fee as required by ordinance of the City of Austin, and an annual payment of $94.90 [the sum varies with the three agreements]. Failure to pay such annual payment by the first day of the month following the expiration of one (1) year from the anniversary date of original license will result in immediate expiration of said license.

\*    \*    \*    \*    \*    \*

IV.

Licensor retains the right to enter upon the land to which this license applies and at Licensee's expense, to remove any vending stand ... whenever such removal is deemed to be necessary for exercising Licensor's rights or duties in regard to said public right-of-way, and for protecting persons or property, or public interest in regard to said public

right-of-way; provided, however, Licensee shall be entitled to a hearing as soon as is reasonably practical under the circumstances before the City Manager of the City of Austin.

\*    \*    \*    \*    \*    \*

VI.

This license is revocable by the City Manager at any time if, in the opinion of the City Manager, such revocation is reasonably required by the public interest, after having provided Licensee with notice and opportunity to be heard. Grounds for revocation of said license shall include, but are not limited to:

1. Licensee has failed to comply with the terms of this license; or,

2. The use of the portion of the right-of-way licensed herein interferes with the rights of the City or the public in said public right-of-way; or,

3. The use of the public right-of-way area becomes necessary for a public purpose; or,

4. Said use of the right-of-way constitutes a danger to the public which is not remediable by modification of the said use; or,

5. Alterations in use necessary to alleviate a danger to the public have not been made within a reasonable time after the dangerous condition has arisen.

Licensee shall have the right to appeal to the City Council any decision made by the City Manager under the provisions hereof which the Licensee considers to be adverse to his interest.

VII.

This license shall take effect upon the acceptance and satisfaction of the terms hereof by the named applicant for this license, as indicated by his signature hereon, and the filing of the same in the office of the City Manager of the City of Austin.

*Clear Lake Util.,* 549 S.W.2d 385 (Tex. 1977); *City of Jacksonville v. General Tel. Co., Etc.,* 538 S.W.2d 253 (Tex.Civ.App. 1976, no writ); *Chevron Oil Co. v. City of El Paso,* 537 S.W.2d 472 (Tex.Civ.App.1976, no writ). *See also* Tex. Const.Ann. art. I, § 17 (1955); *Texas Power & Light Co. v. City of Garland,* 431 S.W.2d 511 (Tex. 1968); *Mayor, Etc., of City of Houston v. Houston St. Ry. Co.,* 83 Tex. 548, 19 S.W. 127 (1892).

We believe the instruments in question clearly evidence the grant of a license to Johnson, and not a franchise, but Johnson's privilege, having been continued in force by his tender and not having been revoked by the City, should have been continued in force by an injunction *pendente lite.* In order that our opinion might be properly understood, in light of the parties' contentions, we should directly analyze the instruments in question in light of the relevant legal principles and definitions.

■ A "franchise" .resulting from a contract made through an exercise of the City's legislative or ordinance-making power is fundamentally different from a "privilege" granted by the City under its power to regulate the use of its streets, as delegated in Tex.Rev.Civ.Stat.Ann. art. 1175, § 16 (1963). A "franchise" may grant a "privilege," but a "privilege" is not necessarily a "franchise." *City of Dallas v. Gill,* 199 S.W. 1144 (Tex.Civ.App.1917, writ ref'd). The word "privilege" is also used, for example, to signify the special right that may be enjoyed only under authority of a license, that is, a right not possessed by persons generally. A "license" has the purpose of regulation under the police power. Here, as in the ordinary case, the City has by specific ordinance restricted the sale of food from locations in the City's streets except that such sales occur under authority of a "license" issued by the City.

A license is merely a permit or privilege to do what otherwise would be unlawful. The object of a license is to confer a right or power which does not exist without it. A license fee is the sum exacted for the privilege of carrying on a particular occupation or business....

*Payne v. Massey,* 145 Tex. 237, 196 S.W.2d 493, 495 (1946). (We need not, in the present case, consider the imposition of license fees as a means of revenue.) A license, when granted, conditionally and partially removes the general restriction imposed by ordinance prohibiting the sale of food from locations in the City's streets.

The words "license" and "permit" are essentially synonymous, but in legal usage the word "license" ordinarily refers to the privilege of conducting a continuing endeavor or activity while the word "permit" ordinarily refers to an act or activity of limited duration, on completion of which the privilege expires. "By way of illustration, it is customary to speak of business licenses or drivers' licenses and to speak of building permits or permits for parades." 9 McQuillin, Municipal Corporations § 26.-01a, at 9 (1978).

The functions served by licenses and permits are these: (1) they are a means for determining in advance the legality of a proposed business, act, activity, or thing; (2) they allow for the permanent registration of grants of official authority; (3) they facilitate inspection and regulation and recovering the cost thereof; and (4) they may be a means for facilitating the collection of municipally imposed excise taxes. *Id.* § 26.02.

■ We hold that the instruments in question evidence the grant of a license to Johnson. So much is implied in the very terms of the instruments but, more importantly, we must presume that the parties intended a valid, and not a void, grant to Johnson of the privilege of selling hot dogs from the street locations specified in the instruments. In other words, we may not presume that the parties intended to circumvent the charter provision that franchises may be granted only through an exercise of the City's ordinance-making power. We hold, in addition, that Johnson's privilege under the license is, in the abstract at least, subject to protection by injunctive relief, even though it is not a contract right or a right shared equally by all persons. *House of Tobacco, Inc. v.*

*Calvert, supra.* We turn then to the issue of whether he was entitled to injunctive relief, *pendente lite,* in the present case.

■ A municipality may impose reasonable conditions upon a privilege that it grants by license. McQuillin, *supra* § 26.-08. We find one such condition in section II of the instruments in question here:

> Licensee agrees to pay the application fee as required by ordinance ... and an annual payment of $94.90 [the sum varies with each instrument]. Failure to pay such annual payment by the first day of the month following the expiration of one (1) year from the anniversary date of original license will result in immediate *expiration* of said license.

(emphasis added). To prevent expiration of his license, Johnson was required to make the annual payment in a timely manner. It is undisputed that he tendered such sum in a timely manner and that the City refused to accept it. Under *State v. Cortez, supra,* the tender had the same legal effect as acceptance, so that expiration of his license did not occur, provided there were no other pertinent conditions that remained unsatisfied. The instruments evidence no other conditions to prevent expiration of Johnson's privilege. The City could have conditioned Johnson's privilege by imposing a time limitation upon its duration, or it could have required that its annual consent was necessary to a renewal of the privilege, or that its acceptance of the annual fee was required to prevent expiration. The instruments do not themselves reveal any such condition to prevent expiration of Johnson's privilege and his case would appear therefore to fall within the holding in *Murphy v. Mittelstadt, supra.*

■ We find, however, the following general statement:

> Renewal of certain licenses periodically, e.g., annually, on payment of an annual license fee or tax is common, and the renewal may be as a matter of course, or upon reasonable conditions. The filing of an application for renewal has the effect of preserving the status quo until the city acts thereon in the manner required by law. The renewal of certain licenses or permits cannot arbitrarily be denied.... *But generally, a ground for revocation of a license or permit also is ground for refusal to renew it.* Renewal of a license can be refused on grounds that justify its forfeiture, *or the renewal can be refused upon the basis of a change of policy and legislation touching the subject,* where it is issued under the police power as a part of the internal police system of the state, as in the case of a liquor license.

McQuillin, *supra,* § 26.11, at 24 (emphasis added). In our view, the holding in *Murphy v. Mittelstadt, supra,* rejects the theory that a "ground for revocation" may constitute in this case a basis for refusing to accept Johnson's tender. In that opinion, the Court carefully distinguished between statutory provisions that governed the renewal of a license and those provisions that governed the revocation of a license, pointing out the absence of any condition (other than the payment of a fee) to the holder's right of renewal and the availability of administrative review respecting a revocation decision, as opposed to a decision not to renew the license. 199 S.W.2d at 481–82. The pertinent provisions are here contained in the license instruments. In those instruments, no condition is required to prevent expiration, other than the payment of a fee; notice and hearing are required on revocation with a right to appeal to the City council, but no such protections are available on the City's rejection of a sum tendered in payment of the annual fee. Turning to the other possible alternative, may the City's "change of policy," as evidenced by the new guidelines, constitute in the present circumstances a valid ground for refusing to accept Johnson's tender? We hold it may not, for under the license instruments the right of the City to revoke at any time the privilege granted to Johnson, when reasonably "required by the public interest," was the avenue chosen by the City, as a condition of the grant, for implementing its right to change its relevant policies. Moreover, we believe the principles of *Murphy v. Mittel-*

*stadt* would apply and require rejection of this theory for that supervening reason.

In the body of Johnson's petition, he alleged that he will suffer economic harm if forced to discontinue operation of his stands during the pendency of the suit. He offered evidence in that regard. It is undisputed. He may not operate the stands save under the privilege granted in the license. We interpret his pleadings as a request for a mandatory injunction *pendente lite* that allows his operation of the stands until final hearing on a theory that his tender was sufficient to maintain his privilege in force. We hold he has a probable right in that regard only, making no judgment on his contention that the guidelines are invalid and his request for a prohibitory injunction on that ground.

■ The sole question before the trial court was whether Johnson was entitled to preservation of the *status quo ante* (that is, the conditions immediately following his tender) pending trial on the merits wherein will be adjudicated his disputed right to continue his operations until expiration or revocation of his license. On our part, we are limited to considering whether the trial court abused its discretion in its determination that Johnson was not entitled to such temporary relief. We hold that the trial court abused its discretion in applying the law erroneously to the undisputed facts. *City of Spring Valley v. Southwestern Bell Tel. Co.*, 484 S.W.2d 579 (Tex.1972); *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526 (Tex.1975).

■ Normally, of course, where there are no findings of fact or conclusions of law, as in the present case, we must uphold the trial court's interlocutory order on any legal theory supported by the record. *See generally Davis v. Huey*, 571 S.W.2d 859 (Tex.1978). But here the facts of timely tender, the terms of the license instruments, the ordinances in question, and the prohibition against unlicensed operation of the stands, are undisputed. Under the applicable law, as we have set it out above, Johnson's privilege under the license has not expired; and if the guidelines be valid, until they are applied to Johnson's license

through the City's power of revocation, as set out in the license instruments, they cannot affect his privilege under the license. There is therefore no legal theory upon which the trial court's order may be upheld.

■ The City argues that Johnson has not shown that his remedy at law is inadequate in light of the fact that he may recover money damages if the City has wrongfully refused to accept his tender. Apparently, the City presupposes that Johnson's right is a contract right that may be vindicated through the damages remedy allowed by law for breach of contract. We have held, as the City contends, that Johnson's right is *not* a contract right but merely a privilege granted by the City and revocable at any time the public interest so requires in the reasonable opinion of the city manager. We need not decide whether Johnson's right in that regard is protectable through the judicial award of money damages, for by analogy to the law of contracts, one may enjoin the threatened violation of a right without showing that he has been injured at all. *Moore v. Duggan Abstract Co.*, 154 S.W.2d 519 (Tex.Civ.App. 1941, writ ref'd w.o.m.). The rules applicable to injunctions *pendente lite* are directed at, among other things, preventing the risk of injustice occasioned when a party would otherwise be denied a course of conduct that he may have a legal right to pursue. *State v. Southwestern Bell Tel. Co., supra* at 528; *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961). We have held that Johnson *has* a probable right to pursue his vending business under the City's license until it expires or is lawfully revoked by the City, which the City has not attempted to do. Under the applicable law, the license has not expired. Johnson's right is, however, disputed. The preservation of that probable right *pendente lite* is sufficient justification for an injunction pending a hearing on the merits. "Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary decree protecting a status quo." *Southwest Weather Research, Inc.*

*v. Jones,* 160 Tex. 104, 327 S.W.2d 417, 421 (1959). This is such a case. If Johnson has the right we have imputed to him, he runs an unquestionable risk of injustice if he is immobilized from exercising it *pendente lite.*

> Generally the most expeditious way of obviating the hardship and discomforture of an unfavorable preliminary order is to try the case on its merits and thus secure a hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies.

*Id.* at 422.

We reverse the judgment of the district court and remand to that court for the issuance of an injunction *pendente lite* upon a bond and terms set by that court.