Oscar Wardon STILL, et al., Appellants

v.

EASTMAN CHEMICAL COMPANY, Texas Operations, and Enbridge Pipelines (East Texas), L.P., Appellees.

No. 06–04–00122–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 13, 2005.

Decided Aug. 16, 2005.

Brendan C. Roth, David B. Fugler, The Roth Law Firm, PC, Marshall, for appellants.

Brian Bunt, Bunt & Wright, PLLC, Longview, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

All-terrain vehicles, including four-wheelers and other motorized vehicles, using the ATV Park operated by Oscar Wardon Still, Future Income L.L.C., Rabbit Creek Mountain Mud Blast, Rabbit Creek ATV–RV Park, and East Texas All–Terrain Monsters (collectively Still), ranged over Still's land, as well as over the pipelines buried in five pipeline easements crossing his land. Soon after personnel of Eastman Chemical Company and Enbridge Pipelines (East Texas), L.P. (collectively Appellees), noticed erosion and rutting of the soil over and adjacent to the pipelines, Appellees sought to stop Still from allowing the vehicles to continue using the pipeline easements in a way that caused such erosion or rutting.

From the trial court's award of a temporary injunction in favor of Appellees—which prohibits Still from, among other things, allowing four-wheelers or other motorized vehicles to ride over Appellees' pipelines inside Still's ATV park—Still appeals. We hold that, since there was conflicting evidence before the trial court and part of that evidence supported a temporary injunction, the trial court did not abuse its discretion in issuing the temporary injunction. Thus, we affirm the trial court's judgment.

Appellees are the successors-in-interest to five pipeline easements running through Still's ATV park. In mid-December 2003, Appellees noticed the soil covering their pipelines had begun to erode. On further inspection, they saw evidence of "a lot of ATV traffic on the right-of-way," including the formation of large ruts above some of the pipelines. These ruts concerned Appellees because the ruts meant a loss of "depth cover" above the company's pipelines. For example, two of the pipelines at issue carry ethylene and propane, and these pipelines were buried at a general depth of forty to sixty inches below the surface. Appellees discovered, however, that as a result of the ATV traffic, the displaced dirt left only twenty-four inches of soil above these pipelines, which according to Appellees "would be an unsafe situation under the Railroad Commission rules."

According to Appellees, Still did nothing to prevent any further damage to the soil covering the pipelines between December 2003 and September 2004. To the contrary, Appellees saw evidence of continued erosion of the soil covering the pipelines during the summer and early fall of 2004. So in September 2004, Appellees sued Still and sought to have him enjoined from allowing ATVs to be operated over the pipelines. The trial court ultimately granted a temporary injunction, which Still now challenges on appeal.

The purpose of a temporary injunction is to maintain the status quo pending trial. *Flagship Hotel, Ltd. v. City of Galveston,* 117 S.W.3d 552, 563 (Tex. App.-Texarkana 2003, pet. denied). A temporary injunction should issue only if the applicant demonstrates a probable injury and a probable right to recovery after a final hearing. *Id.* A temporary injunction may not issue "upon mere fear, apprehension, or possibility of injury." *Harbor Perfusion, Inc. v. Floyd,* 45 S.W.3d 713, 716 (Tex.App.-Corpus Christi 2001, no pet.) (citing *Calvary Baptist Church at Tyler v. Adams,* 570 S.W.2d 469, 473 (Tex. Civ.App.-Tyler 1978, no writ); *Thomas v. Bunch,* 41 S.W.2d 359, 362 (Tex.Civ.App.-Fort Worth 1931), *aff'd,* 121 Tex. 225, 49 S.W.2d 421 (1932)).

"Our review of the trial court's action in granting a temporary injunction is limited to determining whether the action constituted an abuse of discretion." *Bay Fin. Sav. Bank, FSB v. Brown,* 142 S.W.3d 586, 589 (Tex.App.-Texarkana 2004, no pet.) (citing *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986)). A trial court abuses its discretion if it acts without reference to guiding rules and principles, acts unreasonably or arbitrarily, or if it misapplies the law to the facts before the court. *Id.* (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court does not abuse its discretion if its decision is based on conflicting evidence. *Id.* When the trial court does not issue written findings of fact and conclusions of law, as is the case here, we must affirm the trial court's judgment if that ruling is correct under any theory applicable to the case. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *2300, Inc. v. City of Arlington,* 888 S.W.2d 123, 126 (Tex.App.-Fort Worth 1994, no writ). We must also view the evidence in the light most favorable to the trial court's judgment and draw all legitimate inferences from the evidence in support of that judgment. *City of Irving v. Dallas County Flood Control Dist.,* 383 S.W.2d 571, 575 (Tex.1964).

At the October 8 hearing on Appellees' request for a temporary injunction, the trial court received testimony from three witnesses. The first witness was David Joseph McDaniel, a pipeline supervisor and chemical engineer for Eastman. McDaniel testified that one mud hole above one of the pipelines appeared to be eighteen or twenty inches deep. McDaniel stated he observed numerous ATV trails running beside and crossing Appellees' pipelines. McDaniel said he could not tell whether the trails had been created as a result of Still's purposeful designation or whether the ATV riders had themselves independently created the trails. But during one site visit, McDaniel did find a printed sign reading "Poker Run Station 1"[1] near Eastman's right-of-way.

---

1. Still would later explain that a "poker run" is where several ATV riders—usually groups of women and children—set out five stations inside an ATV park. At each station is placed a deck of cards. The riders take one card from each deck of cards as they ride from station to station. After the riders return to the starting point with their five cards, the

McDaniel then testified that the risk of an explosion, fire, or other injury was so great that it would be imprudent for Appellees to merely seek a legal remedy after the explosion, fire, or other injury had occurred and, therefore, an injunction was necessary to pre-empt Still's activities from causing the feared injury. McDaniel believed, "From what we've witnessed out there, it's pretty likely that an accident will occur in the next few months." He even thought it was possible the damage to the pipeline would occur as quickly as the weekend following the trial court's hearing on the temporary injunction.

Kyle Jack Hart, the North Area Operations Manager for Enbridge, testified next. Hart said the burial depth of one pipeline was thirty-six inches at the time of construction. Another pipeline was buried forty inches below the surface. The depth of a third pipeline, however, which was constructed between 1958 and 1959, varied from "very, very shallow to very deep, depending on what the construction company ran into when they were building it." Hart admitted on cross-examination that parts of this third pipeline were probably laid at a depth of less than twenty-four inches.

Hart told the trial court he had seen a significant loss of soil cover over the pipelines at Still's ATV park. Hart hypothesized that, if the ATVs continued cutting deep ruts along the pipelines, the pipelines would eventually be exposed, which "increases the likelihood of significant damage to the pipeline." "The exposure will—can take the coating of the pipeline off, which will then accelerate the rate of corrosion . . . ."

Finally, Still testified in opposition to the injunction. Still began operating Rabbit Creek RV Park on Memorial Day weekend of 2002. Still claimed he has not designated, built, or created any specific four-wheeler trails over Appellees' pipelines. Instead, he merely allowed patrons to roam across the surface estate as they saw fit. Still does not try to regulate where the ATV riders go, and his testimony made it clear he plans to continue allowing ATV patrons unfettered access to the entire park. Still discounted the impact that ATVs had on the soil cover over Appellees' pipelines. Instead, he blamed Appellees' own tractors, used to mow the rights-of-way, for causing the deep ruts in question. At oral argument, however, Still made certain factual concessions:

> Now, for purposes of this issue and this argument, I will concede that the conduct complained of was *intended to be continued. I will concede that the conduct complained of did some disturbance or damage to the surface estate— that it caused ruts*. There's no question [that] riding four-wheelers across the ground is going to disturb the grass; it's eventually going to cause a rut if you ride it through mud . . . . It's going to do it whether you do it on this pipeline or whether you do it anywhere in the world.

(Emphasis added.)

▮▮▮ At common law, a fee owner may not interfere with an easement holder's reasonable use and enjoyment of that easement. *Harris County v. S. Pac. Transp. Co.*, 457 S.W.2d 336, 340 (Tex. Civ. App.-Houston [1st Dist.] 1970, no writ). Nor may the property owner make a use

rider with the best poker hand wins a jackpot from money contributed by all the riders to a central pot. According to Still, participants in the poker runs generally tend to be leisurely riders who avoid trying to make ruts in pathways and even avoid going through wet areas. While Still disclaimed any responsibility for the poker runs, he did confess that he provides the participants with playing cards for what he termed an "organized ride."

of the surface that might endanger or interfere with a pipeline. *Phillips Pipe Line Co. v. Razo,* 420 S.W.2d 691, 695 (Tex.1967); *Mobil Pipe Line Co. v. Smith,* 860 S.W.2d 157, 159–60 (Tex.App.-El Paso 1993, writ dism'd w.o.j.). The rights of an easement holder may be protected by injunction. *Craft v. Freeport Oil Co.,* 563 S.W.2d 866, 867–68 (Tex.App.-Amarillo 1978, no writ).

In this case, Appellees sought to enjoin Still from allowing his ATV patrons to further erode the soil covering Appellees' pipelines. The trial court heard conflicting evidence over who was responsible for the loss of depth cover. Appellees' testimony and evidence attributed the lost depth cover to ATV use, use which was clearly sponsored and encouraged by Still. Appellees' witnesses warned of an imminent threat of a pipeline breach that would endanger the pipeline and the nearby neighborhood if the ATV use were allowed to continue over Appellees' pipelines.

Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say the trial court's ruling was made without reference to guiding rules and principles, was arbitrary and unreasonable, or was not supported by any evidence. There was direct testimony that the harm caused by allowing the ATVs to continue to ride over Appellees' pipelines could lead to an explosion as quickly as the weekend following the hearing on the temporary injunction (or, alternatively, within the next few months). Such an explosion would, in turn, endanger the surrounding homes and neighborhood. The common law in Texas expressly forbids a surface estate owner from making use of the surface in any way that endangers a pipeline, and—drawing all reasonable inferences from the evidence before the trial court—it is clear that the trial court had before it evidence that would support a conclusion that allowing Still to continue his activities, unfettered, would endanger Appellees' pipelines. Accordingly, we cannot say the trial court abused its discretion by granting the temporary injunction. We overrule Still's first point of error.

Because the common law supports the trial court's judgment, we need not reach Still's second point of error, which asks us to determine whether Section 756.103 of the Texas Health and Safety Code supports the trial court's decision to issue a temporary injunction. *See* TEX. HEALTH & SAFETY CODE ANN. § 756.103 (Vernon Supp. 2004–2005).

For the reasons stated, we affirm the trial court's judgment.