Sam G. THOYAKULATHU, M.D., and
Sam T. George, P.A., Appellants

v.

Francis J. BRENNAN, Individually,
et al., Appellees.

No. 06–05–00070–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 19, 2005.

Decided April 27, 2006.

Diana L. Faust, R. Brent Cooper, Cooper & Scully, PC, Dallas, for appellant.

David M. Stagner, Stagner & Corley, Kenneth W. Roesler, Attorney At Law, Lester W. Vance, Lester W. Vance, PC, Sherman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

■ By the end of the last day[1] to serve timely expert reports on defendants, Sam G. Thoyakulathu, M.D., and Sam T. George, P.A. (Appellants), health care liability claimant, Francis J. Brennan, had obtained and *filed* reports, but had not *served* them on Appellants. Evidence suggests that, on that day, Brennan tried but failed to serve the reports by facsimile transmission. Appellants moved to dismiss Brennan's claims, but the trial court denied the motion and allowed Brennan a thirty-day extension within which to serve

---

1. The deadline was the 120th day after filing suit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (Vernon Supp.2005).

the reports. Two orders were entered in connection with the trial court's decision, one granting Brennan a thirty-day extension within which to serve the reports, and the other denying Appellants' motion to dismiss.[2] We must determine whether the trial court properly denied Appellants' motion to dismiss. We conclude the trial court erred because, as applied to the facts of this case,[3] Section 74.351(1) mandates

2. Since, on its face, one of the trial court's orders purports to grant an extension pursuant to Section 74.351(c), and Appellants also challenge that order, a question arises regarding our jurisdiction over interlocutory appeals. See Badiga v. Lopez, No. 13–04–452–CV, 2005 WL 1572273, at *1, 2005 Tex.App. LEXIS 5191, at *2 (Tex.App.-Corpus Christi July 7, 2005, no pet.). Section 51.014 authorizes an interlocutory appeal of a trial court's denial of a motion to dismiss under Section 74.351(b) but expressly disallows interlocutory appeals of extensions granted under Section 74.351(c). TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2005). We strictly construe Section 51.014 as a narrow exception to the general rule that only final judgments or orders are appealable and, therefore, limit our review to the trial court's order denying the doctor's motion to dismiss. See Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 355 (Tex.2001). Inevitably, however, our holding that the trial court erred in denying Appellants' motion to dismiss affects the trial court's order granting the extension. This consequence is consistent with and unavoidable under the structure of the statute. "[T]he relief a court grants under (b) is always 'subject to Subsection (c),' which allows a trial court to deny a defendant's motion to dismiss with fees and costs and instead grant a 30–day extension even where 'an expert report has not been served within the period specified ... because elements of the report are found deficient.' " Acad. of Oriental Med., L.L.C. v. Andra, 173 S.W.3d 184, 188 (Tex. App.-Austin 2005, no pet.). So, our actual determination will be whether, under Section 74.351(b), the trial court was required to dismiss Brennan's claims against Appellants, in effect determining whether the trial court lacked the authority to do anything else, including granting an extension.

3. Brennan's wife, Helen Brennan, had been admitted into Home Hospice of Grayson County January 16, 2001, diagnosed with chronic obstructive pulmonary disease (COPD). Her treatment regimen included high dosages of opiates which, her family contends, are contraindicated for COPD patients. She developed bedsores, slept a great deal, and deteriorated significantly. She passed away July 26, 2002.

On April 22, 2004, Brennan, Helen's husband, sent to Home Hospice his Notice of Health Care Claim. On July 1, 2004, Brennan, individually and as surviving spouse of Helen and their children, Denise, Daniel, and Amy, sued Monica Simpson, Home Hospice, James Thomas Axtell, Jr., individually and d/b/a Diversified Pharmacy Care, Sam Thoyakulathu, M.D., Sam T. George, P.A., and Beckie Goldammer, R.N.

From April 2004 to October 2004, Brennan made several unsuccessful attempts to obtain relevant pharmaceutical records from Axtell. On October 21, Brennan filed his Motion to Extend Report Submission Date. In this motion, using the "good cause" language of former Article 4590i, (see Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985–87, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884), counsel explained his inability to timely file the expert reports due to Axtell's lengthy delay in providing medical records. Appellants responded to Brennan's motion November 1, arguing that the only extension available under Section 74.351 is one obtained by agreement.

On October 29, the day of the 120–day deadline, Brennan timely filed his expert reports from Stephanie Gray, R.N., James Woessner, M.D., Ph.D., and Rodney G. Richmond, R.Ph. Brennan maintains that, on October 29, he attempted to serve the reports on Appellants' attorney but failed due to a facsimile transmission problem. Brennan served the Gray, Woessner, and Richmond reports on Appellants November 2, 2004, by mail. Brennan concedes the reports were not served on or before October 29, 2004. Appellants filed their motion to dismiss November 15, 2004, based on Brennan's failure.

At the hearing on Brennan's motion for extension of time and Appellants' motion to dismiss, Appellants argued that the untimeliness of Brennan's service of the expert re-

dismissal and (2) is not unconstitutional.

### (1) Section 74.351 Mandates Dismissal

■ Section 74.351(a) of the Texas Civil Practice and Remedies Code establishes the 120–day deadline:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.... Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Absent an agreement among the parties for an extension of time to serve the reports, the trial court has no discretion but to dismiss the case with prejudice and to award reasonable attorney's fees and costs of court if the claimant fails to meet this deadline:

> (b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, *subject to Subsection (c)*, enter an order that:
>
> (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court in-

curred by the physician or health care provider; and

> (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2005) (emphasis added).

Section 74.351 provides the only two means of obtaining an extension of the expert report deadline. First, the parties may agree to an extension: "The date for serving the report may be extended by written agreement of the affected parties." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Second, subsection (c) provides for the only extension available without such an agreement:

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120–day deadline has passed, then the 30–day extension shall run from the date the plaintiff first received the notice.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon Supp.2005). This provision appears to serve as an after-the-fact extension, a second chance at getting the report right. That is, the claimant still must serve the expert report by the 120–day deadline, but, if the trial court determines the timely-filed report is deficient, it may

---

ports mandated dismissal with prejudice and an award of attorney's fees and costs. The trial court disagreed and ruled that, under Section 74.351(c) of the Texas Civil Practice and Remedies Code, Brennan had "the right to extend the time for the hearing beyond the 120[-]day period," granting him an additional

thirty days. The trial court also expressed the opinion that the provision was unconstitutional and granted Brennan leave to amend his pleadings to raise due process issues. Brennan amended his pleadings February 17, 2005, to challenge the constitutionality of the statute.

grant an extension in which the claimant may cure any deficiencies in the report.

Since Brennan concedes he failed to serve his reports on Appellants by October 29 and had no agreed extension with the doctors, the only possible statutory relief from mandatory dismissal of his claims against Appellants is found in subsection (c). So, here, the application of Section 74.351(b) is clear: Brennan's claims survive Appellants' motion to dismiss only if Section 74.351(c) applies.

Applying the traditional rules of statutory construction,[4] we agree with Appellants that, properly construed, Section 74.351 mandates dismissal on these facts, since all parties agree that Brennan failed to serve the requisite reports on Appellants by the deadline. Looking first to the plain and common meaning of Section 74.351(c)'s language in the context of the entire statute, we note that Section 74.351(c) applies only when "an expert report has not been served within" the 120–day period *"because elements of the report have been found deficient."* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (emphasis added). This clearly requires a timely-served report that is deficient.

We, therefore, conclude that the subsection (c) extension is available only when a timely-served report does not meet the statutory definition of an "expert report" because it has one or more deficiencies in its contents; subsection (c) does not apply to a report not served by the deadline.

*See Manor Care Health Servs. v. Ragan,* 187 S.W.3d 556, 560 (Tex.App.-Houston [14th Dist.] no pet. h.); *Mokkala,* 178 S.W.3d at 74. If a timely-served report is later found to be inadequate, then the trial court may, in its discretion, grant a thirty-day extension to cure the deficiencies. This construction permits each part of the statute to be meaningful in light of the other portions of the statute.

This construction is also consistent with the legislative history of the 2003 amendments to former Article 4590i. As the Houston–Fourteenth Court points out, Representative Joe Nixon, Chair of the House Committee on Civil Practices, presented House Bill 4 and explained that, if the bill were passed, it meant that, if an attorney missed the deadline for the expert report, the plaintiff would be barred from prosecuting that claim. *Mokkala,* 178 S.W.3d at 74 (including extensive discussion of legislative background of Section 74.351). An extensive article written on the amendments also takes the position that Section 74.351(c) does not apply to this situation: "No extension is available for a failure to file any report." Michael S. Hull, et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History,* 36 Tex. Tech L.Rev. 1, 207 n. 230 (Supp.2005).

The facts before us are not such as would authorize an extension under Section 74.351(c). That being the case, the

---

4. We construe the statute at issue "first by looking to the plain and common meaning of the statute's words." *Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 529 (Tex.2002). Our objective is to determine and give effect to the Legislature's intent. *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). We must determine legislative intent from the entire Act, not just isolated portions, and interpret the Act so that every part is given effect. *Id.* Even if the statute at issue is unambiguous on its face, we may consider matters including (1) the object the legislature sought to obtain; (2) the circumstances under which the legislature enacted the statute; (3) the legislative history; (4) common law or former statutory provision, including law on the same or similar subjects; and (5) the consequences of a particular construction. *See Mokkala v. Mead,* 178 S.W.3d 66, 74 (Tex. App.-Houston [14th Dist.] 2005, pet. filed) (citing Tex. Gov't Code Ann. § 311.023) (Vernon 2005)).

trial court was bound by Section 74.351(b)'s mandatory dismissal provision. The provisions leave no room for a construction other than the one proposed by Appellants. Dismissal is required, unless the statute is unconstitutional.

*(2) Section 74.351 Is Not Unconstitutional*

■ Brennan claims that Section 74.351, as applied, denies him due process and due course[5] of law. Although arising in an unorthodox manner, Brennan's constitutional challenge appears to have been properly before the trial court.[6] Additionally, Appellants did not move to strike or otherwise object to the amendments raising the constitutional issues.

■ The United States Constitution provides that "[n]o State ... shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. These words "require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (quoting *Mullane v. Cent. Hanover Bank & Trust*

*Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). A restriction on litigants' use of established adjudicatory procedures denies due process when such restriction is "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." *Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

■ A cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause. *See Logan*, 455 U.S. at 428, 102 S.Ct. 1148. Therefore, statutory procedures that deprive someone of a statutory right must be held up to constitutional analysis. *Id.* at 432, 102 S.Ct. 1148. Due process requires that state procedures must provide proper procedural safeguards before a claimant's property interest is destroyed. *Id.; Bank of Am. Nat'l Trust & Sav. Ass'n v. Dallas Cent. Appraisal Dist.*, 765 S.W.2d 451, 453 (Tex.App.-Dallas 1988, writ denied). We must examine Section 74.351 for the presence or absence of those "proper procedural safeguards."

■ When dealing in the context of restrictions placed on health care liability

---

**5.** The Texas Constitution provides the following guarantee: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The Texas Supreme Court has recognized the different wording used in the state "due course" provision compared to the federal "due process" provision, but has concluded that the terms are "without meaningful distinction." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995) (citing *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887)). Therefore, in matters of procedural due process, Texas courts have traditionally followed contemporary federal due process interpretations of procedural due process issues. *See Than*, 901 S.W.2d at 929.

**6.** The order denying the motion to dismiss appears to limit its consideration to the motion to dismiss and "the pleadings therein." But, since there are no formal findings of fact or conclusions of law, we are to uphold the trial court's order if it is supported on any basis revealed by the record. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978) (denial of temporary injunction); *Johnson v. Austin*, 674 S.W.2d 894, 899 (Tex.App.-Austin 1984, no writ) (review of interlocutory order); *see also Still v. Eastman Chem. Co.*, 170 S.W.3d 851, 853 (Tex.App.-Texarkana 2005, no pet.). Therefore, regardless of the concerns raised by the unorthodox manner in which the constitutional issues were put before the trial court, we are to review the issues and determine whether the record supports a conclusion that the provision is unconstitutional as applied.

claims, we operate with two general principles in mind. First, "there are constitutional limitations upon the power of courts ... to dismiss an action without affording a party the opportunity for a hearing on the merits of his [or her] cause." *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex.2003) (quoting *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991)). Second, the filing of a frivolous lawsuit can be misconduct subject to sanction. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).

■■■ We begin our analysis presuming that the statute is constitutional. *See* TEX. GOV'T CODE ANN. § 311.121; *Walker*, 111 S.W.3d at 66; *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996). A mere difference of opinion, where reasonable minds could differ, is an insufficient basis for striking down legislation as arbitrary or unreasonable. *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983); *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968).

No cases have specifically measured Section 74.351 against due process requirements. We, therefore, look to cases addressing Section 74.351's predecessor, Article 4590i. Former Article 4590i withstood constitutional challenges in a number of cases and on several different grounds. *See Perry v. Stanley*, 83 S.W.3d 819, 825 (Tex.App.-Texarkana 2002, no pet.); *Knie v. Piskun*, 23 S.W.3d 455, 467 (Tex.App.-Amarillo 2000, pet. denied); *Andress v. MacGregor Med. Ass'n*, 5 S.W.3d 855, 860 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 537 (Tex.App.-Texarkana 1998, pet. denied); *Odak v. Arlington Mem'l Hosp.*, 934 S.W.2d 868, 873 (Tex. App.-Fort Worth 1996, writ denied).

The Texas Supreme Court confirmed these conclusions, holding that the former Article 4590i's failure to require notice of noncompliance before a motion to dismiss is filed did not render the statute unconstitutional. *See Walker*, 111 S.W.3d at 65.[7] The Court went on to explain that due process does not require "prior notice that the law is serious about a clearly stated consequence." *Id.* at 66.

Similarly, due process does not require additional or broader grounds for extending the clearly stated service deadline or relief from the clearly stated consequences of failing to meet that deadline. Here, we have a situation arising from a possibly malfunctioning facsimile machine on the last day of the allowable time period. As a result of this last-minute problem, Brennan failed to serve the report on Appellants. Section 74.351 need not provide an exception geared toward such misfortune in order to provide constitutionally adequate safeguards. The trial court must dismiss the claim if an expert report has not been served by the deadline. Mandatory dismissal is a "clearly stated consequence" for failing to comply with the statutory deadline.

Applying the reasoning in *Walker* to this statute and to these facts, we conclude that statute need not provide exceptions that would encompass any conceivable compli-

7. We recognize that, in addressing former Article 4590i, *Walker* involves a different timetable and a different set of available extensions. Yet, we still find guidance in *Walker's* general analysis of due process requirements and note that such requirements are applicable here since we are also dealing with a health care liability claim. That is, while the statutory scheme at issue in *Walker* may differ somewhat from that at issue here, due process considerations, including what due process does and does not require, remain the same. We rely on the high court's reasoning with respect to what process Brennan was and was not due.

cation in order to pass constitutional muster.[8] We overrule Brennan's contention that due process requires that Section 74.351 provide a claimant with additional extensions or a means of seeking relief from the consequences for failure to meet the statutory deadline. Recognizing the two general considerations—that the State has a legitimate interest in placing restrictions on the filing of health care liability claims but that a court's power to dismiss a claim is limited—we conclude that Section 74.351 is not unconstitutional as applied to Brennan and that, therefore, a contrary conclusion could not serve as a basis for the trial court's denial of Appellants' motion to dismiss Brennan's claims.

*Conclusion*

As written, Section 74.351(b) requires dismissal of a health care liability claim if no expert report is served by the 120–day deadline. Section 74.351(b) is expressly made subject to subsection (c), which authorizes a thirty-day extension under narrow circumstances not presented here— Brennan concedes he did not timely serve Appellants with an expert report of any kind. There is no provision under which Brennan could seek or be granted an extension. Section 74.351(c) applies only when an expert report was not "served" because it was inadequate, not when no report was served at all.

The absence of such an extension is not unconstitutional as applied to Brennan. The trial court's denial of Appellants' motion to dismiss was error. Therefore, we reverse the trial court's denial of Appellants' motion to dismiss and remand this cause to the trial court for dismissal of Brennan's claims against Appellants and for further proceedings regarding statutory attorney's fees and costs.

---

**8.** Brennan's appellate argument premised on his failure to receive discovery from another party, in essence urging that due process was denied because there was no exception in Section 74.351 for discovery problems, ignores the remedies available to him to enforce lawful discovery requests. While we can certainly imagine a due process deprivation to a health care liability claimant pinned between a firm expert report deadline and a hypothetical absence of discovery tools, Brennan has not carried his burden of demonstrating that he was denied due process by such a situation.