NUMBER 13-08-00386-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAYMOND R. "TREY" FULP, III, D.O. AND 

COLUMBIA RIO GRANDE HEALTHCARE, L.P., 

D/B/A RIO GRANDE REGIONAL HOSPITAL, Appellants,


v.



ROBERT MILLER, Appellee.

 



On appeal from the 370th District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Rodriguez, Garza, and Vela


Opinion by Justice Garza


 

 Appellants, Raymond R. Fulp III, D.O. and Columbia Rio Grande Healthcare, L.P.
d/b/a Rio Grande Regional Hospital (the "Hospital"), appeal a judgment denying their
motions to dismiss a health care liability claim filed by appellee, Robert Miller. By one
issue, Fulp argues that the trial court abused its discretion in denying his motion to dismiss
because Miller did not timely submit expert reports that complied with the requirements of
section 74.351 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351 (Vernon Supp. 2008). In addition, the Hospital contends by one issue that
the trial court abused its discretion in denying its motion to dismiss because Miller failed
to serve a copy of his expert reports on the Hospital's attorney in charge. (1) We reverse and
remand for proceedings consistent with this opinion. I. Factual and Procedural Background


 On December 20, 2007, Miller filed his original petition asserting various medical
malpractice claims against Fulp, the Hospital, and anesthesiologist Daniel Requenes,
M.D. (2) Specifically, Miller took issue with an elective hip revision surgery performed by Fulp
on November 18, 2005. 

 Miller was admitted to the Hospital on November 10, 2005, due to an injury to his
right hip. According to his original petition, Miller suffered complications from the
November 18, 2005 surgery performed by Fulp, including acute renal failure, post-operative shock, post-operative hemorrhagic anemia, dehydration, pulmonary collapse,
and iatrogenic hypotension. These complications required an extensive stay in the
intensive care unit and subsequent medical care. After he was discharged from the
Hospital, Miller remained on bed rest for two months. He noticed that "[h]is right leg was
externally rotated and markedly shorter than the left leg with a very limited range of
motion." As a result, Miller remained in Fulp's care for an additional three months. During
this time, Fulp took x-rays of Miller's leg. Miller alleged that he repeatedly informed Fulp
of his constant pain and that his condition had not improved since the surgery. However,
Fulp "reassured Plaintiff [Miller] that 'everything was fine' and that Plaintiff would be able
to walk again."

 In September 2006, Miller sought a second opinion from another orthopedic
surgeon. After this consultation, Miller was told that he needed a second hip revision
because x-rays revealed the "hip prosthesis coming through the femur and the prosthesis
was floating within the thigh." Miller was also told that "the films showed that the integrity
of the wires holding the femur together was poor" and that "the wires had indeed broken
in the intervening period and the prosthesis was totally loose." Miller alleged that he
"incurred additional expenses for medical care, endured physical pain[,] as well as mental
anguish, permanent impairment, and disability . . . ."

 On January 16, 2008, attorney Steven Gonzalez filed an original answer on behalf
of the Hospital denying Miller's allegations. On January 25, 2008, Fulp filed his original
answer denying all of Miller's allegations. On April 18, 2008, Miller filed notice of his expert
reports with Fulp's counsel and John R. Lyde, counsel for the Hospital in an unrelated
medical malpractice suit. In his notice, Miller attached the expert reports of Jetta M. Brown,
M.D., Cindy Miller, R.N., and Gregory S. Goldsmith, M.D. 

 On April 25, 2008, Fulp filed objections to Miller's expert reports and a motion to
dismiss. See id. § 74.351(b). In his filing, Fulp alleged that the expert reports failed to: 
(1) set forth the applicable standard of care; (2) identify the alleged breach by Fulp; and
(3) identify and explain "any causal link between any alleged breaches and the Plaintiff's
complained of injuries." Subsequently, on May 8, 2008, the Hospital filed its motion to
dismiss, alleging that Miller had failed to timely serve an expert report and curriculum vitae
on its attorney in charge within the 120-day time frame prescribed by section 74.351(a) of
the civil practice and remedies code. See id. §§ 74.351(a), (b). 

 On May 27, 2008, the trial court conducted a hearing on Fulp's objections and
motion to dismiss and the Hospital's motion to dismiss. Also on May 27, 2008, Miller filed
a response to Fulp's objections and motion to dismiss. In this filing, Miller, for the first time,
included Gonzalez in the certificate of service. The trial court denied Fulp's objections and
motion to dismiss on June 2, 2008, and the Hospital's motion to dismiss on June 6, 2008. 
This appeal ensued. 

II. Statement of Jurisdiction

 Jurisdiction is proper in this Court pursuant to section 51.014(a)(9) of the Texas Civil
Practice and Remedies Code. Id. § 51.014(a)(9) (Vernon 2008). Section 51.014(a)(9)
permits the appeal of an interlocutory order from a district court order that "denies all or
part of the relief sought by a motion under Section 74.351(b) . . . ." Id.

III. Standard of Review


 We review a trial court's decision to dismiss a case pursuant to section 74.351 of
the civil practice and remedies code under an abuse of discretion standard. See Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877-78 (Tex. 2001). The
trial court abuses its discretion if it acted arbitrarily or unreasonably without reference to
any guiding rules or principles when it denies a motion for dismissal and sanctions. See
Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Strom v. Mem'l Hermann Hosp. Sys.,
110 S.W.3d 216, 220 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). 

III. Fulp's Motion to Dismiss


 By his sole issue on appeal, Fulp asserts that the trial court abused its discretion in
denying his motion to dismiss because Miller failed to timely serve expert reports that
complied with section 74.351. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6). 
Specifically, Fulp argues that: (1) Brown and Cindy are not qualified to render opinions as
to Fulp's liability; (2) Goldsmith's expert report failed to set forth the appropriate standard
of care; and (3) Goldsmith's expert report failed to establish causation. In addition, Fulp
contends that the trial court abused its discretion in refusing to award him attorney's fees.

a. Applicable Law


 Section 74.351 of the civil practice and remedies code provides, in relevant part,
that:

 (a) In a health care liability claim, a claimant shall, not later than the
120th day after the date the original petition was filed, serve on each party
or the party's attorney one or more expert reports, with a curriculum vitae of
each expert listed in the report for each physician or health care provider
against whom a liability claim is asserted. . . .


 (b) If, as to a defendant physician or health care provider, an expert
report has not been served within the period specified by Subsection (a), the
court, on the motion of the affected physician or health care provider, shall,
subject to Subsection (c), enter an order that:

 

 (1) awards to the affected physician or health care provider
reasonable attorney's fees and costs of court incurred by the
physician or health care provider; and

 

 (2) dismisses the claim with respect to the physician or health care
provider, with prejudice to the refiling of the claim.


 (c) If an expert report has not been served within the period specified
by Subsection (a) because elements of the report are found deficient, the
court may grant one 30-day extension to the claimant in order to cure the
deficiency. If the claimant does not receive notice of the court's ruling
granting the extension until after the 120-day deadline has passed, then the
30-day extension shall run from the date the plaintiff first received notice.

 

 . . . .

 

 (l) A court shall grant a motion challenging the adequacy of an expert
report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an
expert report in Subsection (r)(6).

 

 . . . .

 

 (r)(6) "Expert report" means a written report by an expert that provides
a fair summary of the expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between the failure and the injury, harm, or damages claimed.


Id. § 74.351(a)-(c), (l), (r)(6).


 Generally, an expert report's adequacy does not depend on whether the expert uses
any particular "magical words." Windsor v. Maxwell, 121 S.W.3d 42, 48 (Tex. App.-Fort
Worth 2003, pet. denied) (citing Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex.
2002)). A report is sufficient if it "contains information summarizing and explaining the
causal relationship between the doctor's failure to meet the applicable standards of care
and the plaintiff's injury." Id. (citing Bowie, 79 S.W.3d at 53). The expert must explain the
basis of "his statements" linking "his conclusions" to the facts. See Earle v. Ratliff, 998
S.W.3d 882, 890 (Tex. 1999). Moreover, a "fair summary" is "something less than a full
statement" of the applicable standard of care, how it was breached, and how that breach
caused the injury. Spitzer v. Berry, 247 S.W.3d 747, 750 (Tex. App.-Tyler 2008, pet.
denied) (quoting Palacios, 46 S.W.3d at 880). "Nonetheless, 'a fair summary must set out
what care was expected, but not given' and how that caused the injury." Id. (quoting
Palacios, 46 S.W.3d at 880). 

 In Palacios, the Texas Supreme Court stated that: 

 [t]he issue for the trial court is whether 'the report' represents a good-faith
effort to comply with the statutory definition of an expert report. . . . That
definition requires, as to each defendant, a fair summary of the expert's
opinions about the applicable standard of care, the manner in which the care
failed to meet that standard, and the causal relationship between that failure
and the claimed injury. Because the statute focuses on what the report
discusses, the only information relevant to the inquiry is within the four
corners of the document.


46 S.W.3d at 878 (internal citations omitted). An expert report need not marshal all the
plaintiff's proof, but it must include the expert's opinion on each of the elements identified
in the statute in order to represent a good-faith effort. Id.; see Spitzer, 247 S.W.3d at 751. 
Additionally, the supreme court fashioned a two-part inquiry for reviewing expert reports. 
Palacios, 46 S.W.3d at 879. "First, the report must inform the defendant of the specific
conduct the plaintiff has called into question. Second, and equally important, the report
must provide a basis for the trial court to conclude that the claims have merit." Id.


b. Discussion 


 At the outset, we address Fulp's arguments as to the qualifications of Brown and
Cindy to opine on Fulp's liability. Neither Brown's nor Cindy's expert reports specifically
analyze the standard of care, breach of the standard of care, or causation as to Fulp. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). As Miller stated in his April 18, 2008
expert report notice, both Brown's and Cindy's expert reports addressed "the negligence
of Defendant COLUMBIA RIO GRANDE HEALTCHARE [sic], L.P. d/b/a RIO GRANDE
REGIONAL HOSPITAL . . . ." Only Goldsmith's expert report references Fulp with respect
to the essential elements delineated in section 74.351(r)(6)--standard of care, breach of
the standard of care, and causation. See id. Because neither Brown's nor Cindy's expert
reports reference Fulp with respect to the section 74.351(r)(6) elements, we need not
address Fulp's argument as to Brown's and Cindy's qualifications to opine on Fulp's
liability. See Tex. R. App. P. 47.1. Instead, we will focus on the adequacy of Goldsmith's
expert report in addressing Fulp's liability. (3) 

 In his expert report, Goldsmith noted the following:


 2. Applicable Standards of Care Relating to Ray R. Fulp, III, M.D.

 

 The standard of care for orthopedic treatment of the post-closed
reduction of the right hip of Mr. Miller on and after November 10, 2005 would
indicate further non-operative treatment and evaluation. After the closed
reduction procedure, a patient [of] Mr. Miller's age and other medical
conditions should have been followed with recommendations of restricted
activity to reduce the risk of further dislocation. There is no documentation
of or imaging studies that show the hip dislocation was due to component
malposition. To determine if the components are malpositioned, imaging
studies should have been done prior to surgery. This was an elective
procedure, and Dr. Fulp should have proceeded with appropriate imaging
studies and obtain[ed] old records. There is no documentation that surgical
revision and replacement of the femoral prosthesis was indicated, and it was
a violation of the applicable standard of medical practice to undertake such
procedure on November 18, 2005.


 The patient should have been informed of the technical difficulty and
complications of revising the well-fixed components as well as given a
prognosis and non-operative treatment option.

 

 Dr. Fulp had to cut and split the femur to remove the existing
prosthesis and the procedure he undertook and completed resulted in an
unstable, painful, and deteriorating joint.

 

 It was further the minimum standard of medical care for Dr. Fulp to
follow this patient closely post-surgery and insure that his reconstructed and
cabled femur was growing back together and was strong enough to
withstand his weight during ambulation. As reflected by the x-rays taken by
Dr. Fulp on February 8, 2006, March 14, 2006, and April 4, 2006, and as
reflected by his progress notes of the same dates, Dr. Fulp failed to perceive
that the condition of the femur and femoral prosthesis was deteriorating and
he failed to undertake corrective surgery to prevent further destruction and
deterioration of the femur.

 

 Further, it was the standard of care for Dr. Fulp to intervene to repair
the failing prosthesis and femur condition or, as did Dr. Basset on September
21, 2006, to refer the patient to another surgeon with the experience and
ability to address the failure, such as Dr. Christensen. Dr. Fulp breached the
standards of care by his failure to either intervene or refer.

 

 Causal Connection Between Breach of Standard and Injury to Patient

 

 As a result of breach of the standard of care by Dr. Fulp as discussed
above, Mr. Miller sustained the following injuries/damages:

 

 1. Inability to walk without assistance for 18 months post-surgically;

 2. Additional medical expenses;

 3. Pain and mental anguish;

 4. Extensive and permanent bone loss of the greater trochanter;
and 

 5. Future medical expenses related to the right hip.


 Fulp's primary complaints as to Goldsmith's expert report is that Goldsmith failed
to set forth the applicable standard of care and that Goldsmith did not establish the causal
link between Fulp's alleged breaches of the standard of care and the injuries Miller
sustained.

 In his expert report, Goldsmith was not required to marshal all of the evidence Miller
expected to present at trial, and Goldsmith was required only to provide a "fair summary"
of the required elements. See Bowie, 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878);
see also Spitzer, 247 S.W.3d at 750. It is clear from Miller's pleadings that he took issue
with: (1) the November 18, 2005 elective surgery conducted by Fulp; and (2) Fulp's failure
to intervene or refer him to another specialist after his hip failed to heal properly following
the elective surgery. Contrary to Fulp's contentions, Goldsmith's expert report adequately
sets forth the standard of care pertaining to Fulp and how that standard of care was
breached. However, we agree with Fulp's contention that Goldsmith failed to establish a
causal link between Fulp's alleged breaches of the standard of care and the injuries Miller
sustained. 

 The Texas Supreme Court has held that an expert report "cannot merely state the
expert's conclusions about these elements. . . . Rather, the expert must explain the basis
of his statement to link his conclusions to the facts." Bowie, 79 S.W.3d at 52. Because
he failed to link his conclusions to the facts, Goldsmith's conclusory statements about the
injuries and damages Miller sustained following Fulp's alleged breaches of the standard
of care do not suffice to establish the explanation of the causation requirement for expert
reports. See Windsor, 121 S.W.3d at 49 (citing Ratliff, 998 S.W.2d at 890 (noting that the
expert must explain the basis of "his statements" linking "his conclusions" to the facts)). 
Moreover, we are precluded from filling gaps in a report by drawing inferences or guessing
as to what the expert likely meant or intended. See Austin Heart P.A. v. Webb, 228
S.W.3d 276, 279 (Tex. App.-Austin 2007, no pet.); Bowie, 79 S.W.3d at 53 ("The report
must include the required information within its four corners."). As a result, we conclude
that Goldsmith's expert report is deficient as to the causation element; therefore, the trial
court abused its discretion in denying Fulp's motion to dismiss. Accordingly, we sustain
Fulp's sole issue on appeal. 

c. Opportunity to Cure


 The Supreme Court of Texas has recently held that, when elements of a timely filed
expert report are found adequate by the trial court but ruled deficient by a court of appeals,
one thirty-day extension to cure the report may be granted by the trial court upon remand,
even if the original 120-day period for filing such a report has expired. Leland v. Brandal,
257 S.W.3d 204, 206-07 (Tex. 2008); see Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). 
Accordingly, because we have concluded that Goldsmith's expert report is deficient as to
the causation element, it is for the trial court to determine whether to grant Miller one thirty-day extension to file a compliant expert report. See Leland, 257 S.W.3d 204, 206-08; see
also Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (stating that, "[i]f the claimant does not
receive notice of the court's ruling granting the extension until after the 120-day deadline
has passed, then the 30-day extension shall run from the date the plaintiff first received the
notice"). 

 Furthermore, because Miller may be entitled to one thirty-day extension pursuant
to section 74.351(c), Fulp is not entitled to an award of attorney's fees under section
74.351(b) of the civil practice and remedies code at this stage. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(b) (providing that a health care provider is entitled to, among other
things, attorney's fees subject to section 74.351(c)'s thirty-day extension provision); see
also Crites v. Collins, 215 S.W.3d 924, 927 (Tex. App.-Dallas 2007, pet. filed) (holding, in
a health care liability claim, that "if a defendant is not entitled to dismissal with prejudice,
it is also not entitled to reasonable attorney's fees and costs"). 

IV. The Hospital's Motion to Dismiss


 By its sole issue on appeal, the Hospital argues that the trial court abused its
discretion in denying its motion to dismiss because Miller failed to timely serve his expert
reports on the Hospital's attorney in charge. We agree.


1. Standard of Review


 The ruling under review with respect to the Hospital concerns a purely legal issue: 
whether the Hospital was served in accordance with section 74.351(a). We review such
questions of law de novo. See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237
S.W.3d 869, 871 (Tex. App.-Houston [1st Dist.] 2007, pet. denied); see also Buck v. Blum,
130 S.W.3d 285, 290 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (noting that to the
extent that the resolution of an issue requires an interpretation of the health care liability
statute, a de novo standard applies); Ponce v. El Paso Healthcare Sys., Ltd., 55 S.W.3d
34, 36 (Tex. App.-El Paso 2001, pet. denied) (same).

2. Discussion


 Section 74.351 does not define the term "serve." Therefore, we must look to the
Code Construction Act for guidance. See Herrera v. Seton Nw. Hosp., 212 S.W.3d 452,
459 (Tex. App.-Austin 2006, no pet.). The Code Construction Act states that "'words and
phrases that have acquired a technical or particular meaning, whether by legislative
definition or otherwise, shall be construed accordingly.'" Id. (quoting Tex. Gov't Code Ann.
§ 311.011(b) (Vernon 2005)). "Serve" and "served" have distinct and familiar legal
meanings within the context of the rules of civil procedure. Id. (citing Tex. R. Civ. P. 21a).
Given the applicability of the rules of civil procedure to health care liability claims, see Tex.
Civ. Prac. & Rem. Code Ann. § 74.002 (Vernon 2005), and the use of "serve" and "served"
in the statute, we agree with our sister courts that the Legislature intended for claimants
to comply with rule 21a requirements to fulfill the requirements of section 74.351(a). 
Gutierrez, 237 S.W.3d at 872 (citing Herrera, 212 S.W.3d at 459; Kendrick v. Garcia, 171
S.W.3d 698, 703-04 (Tex. App.-Eastland 2005, pet. denied)).

 As recognized by the Gutierrez court, "[t]his construction is supported by a legislative
change that replaced the word 'furnish' with 'serve'" based on the following:


 Prior to the enactment of Chapter 74, medical-liability claims were governed
by article 4590i of the Texas Revised Civil Statutes, which required a health-care-liability claimant to furnish an expert report within 180 days after the
claim was filed. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d), repealed by
Act of 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. 
When the legislature repealed article 4590i in 2003 and enacted Chapter 74,
it replaced the word "furnish" with the term "serve." We presume that the
Legislature enacted the statutory change with knowledge of existing law. 
See Herrera, 212 S.W.3d at 459 (citing Acker v. Tex. Water Comm'n, 790
S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted
by the legislature with complete knowledge of the existing law and with
reference to it.")). Therefore, we may also presume its awareness of the
meaning attached to the word "serve." Id. 


237 S.W.3d at 872.

 Rule 21a authorizes the following four methods for service upon a party: (1) delivery
in person, by agent, or by courier-receipted delivery; (2) certified or registered mail; (3)
telephonic document transfer; or (4) such other manner as the court in its discretion may
direct. Tex. R. Civ. P. 21a. In addition, the party or attorney of record must certify to the
court compliance with this rule in writing over signature and on the filed instrument. Id.

 Here, Miller served Lyde with copies of his expert reports in a manner consistent
with rule 21a. See id. However, the record demonstrates that Gonzalez, not Lyde, filed
the Hospital's original answer to Miller's petition on January 16, 2008, thus constituting the
Hospital's first appearance in this case. Once again, chapter 74 is not clear as to exactly
who a party must serve; section 74.351(a) merely provides that a claimant must serve his
expert reports on the "party or the party's attorney." Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a).

 Section 74.001(b) states that "[a]ny legal term or word of art used in this chapter,
not otherwise defined in this chapter, shall have such meaning as is consistent with the
common law." Id. § 74.001(b) (Vernon 2005). Because the rules of civil procedure apply
to health care liability claims, see id. § 74.002, and because several Texas courts have
already concluded that rule 21a governs service in health care liability claims, we conclude
the legislature intended also for rule 8, a corollary to rule 21a's service requirements, to
apply to health care liability claims. See Morin v. Boecker, 122 S.W.3d 911, 914 (Tex.
App.-Corpus Christi 2003, no pet.) (holding that "when a party is represented by counsel
who has made an appearance, rules 8 and 21a require that all communications be sent
to the party's attorney") (citing Bruneio v. Bruneio, 890 S.W.2d 150, 155 (Tex.
App.-Corpus Christi 1994, no writ) ("[The] rules suggest that . . . notice . . . [be] sent to the
attorney in charge if the party is represented, or to the party himself if pro se.")); see also
Prestwood v. Settle, No. 03-07-00111-CV, 2008 Tex. App. LEXIS 1458, at *9 n.5 (Tex.
App.-Austin Feb. 28, 2008, pet. filed) (noting that there was no dispute that rule 8 of the
rules of civil procedure required that expert reports in a health care liability claim to be
served on the attorney in charge therefore implicitly concluding that rule 8 applies to health
care liability claims); McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003) (stating that,
in construing a statute, "our primary objective is to determine and give effect to the
Legislature's intent") (quoting Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000)). 

 In the present case, Gonzalez was the attorney in charge because he made the
Hospital's initial appearance. (4) See Tex. R. Civ. P. 8. As such, Miller was required to serve
Gonzalez with the expert reports in accordance with rules 8 and 21a. See id.; see also
Tex. R. Civ. P. 21a. As Miller admitted at the hearing on the Hospital's motion to dismiss,
he failed to serve Gonzalez with his expert reports within the 120-day deadline prescribed
in section 74.351(a). See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Instead, Miller
served his expert reports on Lyde under the assumption that Lyde represented the Hospital
in this case, even though he actually represented the Hospital in an unrelated medical
malpractice case. Clearly, Miller failed to comply with rule 8 and, in turn, did not comply
with section 74.351(a). See Tex. R. Civ. P. 8; see also Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a). We therefore conclude that the trial court abused its discretion in denying the
Hospital's motion to dismiss. Section 74.351(b) requires that the trial court dismiss Miller's
claims as to the Hospital with prejudice and award the Hospital attorney's fees and costs
of court. See Tex. Civ. Prac. & Rem. Code. § 74.351(b). Accordingly, we sustain the
Hospital's sole issue on appeal.

V. Henrichson's Motion to Dismiss for Lack of Jurisdiction

 In his appellate brief, Fulp named Miller's counsel, Preston Henrichson, as a party
to the appeal. On December 1, 2008, Henrichson filed a motion to dismiss for lack of
jurisdiction. In his motion, Henrichson notes that this Court does not have jurisdiction over
him because he was not a party to the underlying proceedings. In his response, Fulp relies
heavily on the previous version of the medical liability act, former article 4590i, section
13.01(e). See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01(e), 1995 Tex. Gen.
Laws 985, 986 (former Tex Rev. Civ. Stat. art. 4590i, § 13.01(e)), repealed by Act of June
2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. Former section
13.01(e) provided that if an expert report is not timely filed or a physician or health care
provider is not voluntarily non-suited, the court shall:


 enter an order awarding as sanctions against the claimant or the claimant's
attorney:

 

 (1) the reasonable attorney's fees and costs of court incurred by that
defendant;

 

 (2) the forfeiture of any cost bond respecting the claimant's claim
against the defendant to the extent necessary to pay the award; and

 

 (3) the dismissal of the action of the claimant against that defendant
with prejudice to the claim's refiling.


Id. (emphasis added). However, the corresponding section of the current version of the
medical liability act, section 74.351(b), does not provide that the affected physician or
health care provider may obtain attorney's fees from the claimant's attorney. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2008); see also Schott v. Leissner,
659 S.W.2d 752, 754 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.) ("When the
legislature amends a law, it is presumed that it intends to change the law."); Crites, 215
S.W.3d at 927.

 Fulp also relies on the San Antonio Court of Appeals' decision in Loeffler v. Lytle
Independent School District, to support his contention that Henrichson should be liable for
attorney's fees concurrently with Miller. See 211 S.W.3d 331, 348 (Tex. App.-San Antonio
2006, pet. denied). However, the Lytle court, in addressing a declaratory judgment action
involving disputed property, stated that the trial court has the discretion to award attorney's
fees as a sanction when a party files a claim that is groundless, brought in bad faith, or
brought for the purpose of harassment. Id. In our review of the record, we cannot say that
Miller's suit was brought in bad faith, groundless, or brought for the purpose of harassment.

 Therefore, Fulp has not provided any relevant authority justifying his contention that
Henrichson should also be liable for attorney's fees. Furthermore, we note that Henrichson
was never a named party in the trial court proceeding; Fulp merely named Henrichson a
party on the cover of his appellate brief in order to ensure that attorney's fees would be
paid. Moreover, Fulp's notice of appeal named only Miller as appellee. Because
Henrichson was never a party to the proceedings and was not included in the notice of
appeal, we grant his motion to dismiss for lack of jurisdiction. 

VI. Conclusion


 Based on the foregoing, we reverse the orders of the trial court denying Fulp's and
the Hospital's motions to dismiss. With respect to Fulp, we remand for the trial court to
determine whether to grant Miller one thirty-day extension to file a compliant expert report
as required by the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a), (c), Leland, 257 S.W.3d at 206-08. With respect to the Hospital, we
remand for the trial court to dismiss Miller's case against the Hospital with prejudice and
assess reasonable attorney's fees and costs of court against Miller in accordance with
section 74.351(b) of the civil practice and remedies code. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(b).



 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed this

the 22nd day of January, 2009.


1. Miller has not filed an appellee's brief in this case.
2. Requenes was non-suited and is not a party to this appeal.
3. Fulp does not challenge Goldsmith's qualifications to render an opinion in this case.
4. The record does not reflect that Lyde or any other attorney represented the Hospital in this case.