# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00115-CV

**Jose Herrera, Appellant**

**v.**

**Seton Northwest Hospital and Francois A. Gordan, M.D., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN401539, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## O P I N I O N

In this appeal, we must decide whether the district court was required to dismiss a medical malpractice suit based on the claimant's failure to serve an expert report and *curriculum vitae* in compliance with chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b) (West 2005). Because we conclude that section 74.351(b) mandated dismissal of the claimant's suit and divested the district court of discretion to rule otherwise, we affirm the district court's order of dismissal. *See id*. § 74.351(b).

## BACKGROUND

The record shows that Jose Herrera sued Seton Northwest Hospital and Francois A. Gordon, M.D.[1] on May 14, 2004, alleging that they misdiagnosed his ruptured appendix as food

---

[1] Although Herrera's notice of appeal and, consequently, our caption refer to appellee as Francois A. "Gordan," he identifies himself as Francois A. "Gordon" in his brief and in his trial court pleadings.

poisoning. Under chapter 74, Herrera was required to serve Dr. Gordon and the Hospital with a copy of a report from his expert and his expert's *curriculum vitae* no later than September 11, 2004—the 120th day after filing his suit. *See id.* § 74.351(a). The expert report provides a summary of the expert's opinions regarding the applicable standard of care, how the claimant's physician or health care provider failed to meet that standard, and the causal relationship between that failure and the claimant's injury, harm, or damages. *Id.* § 74.351(r)(6). The record reveals that Herrera filed with the district court an expert report on July 16, 2004, in a document titled "Notice of Filing Expert Affidavit." Herrera filed the expert's *curriculum vitae* with the court on September 21, 2004, in a document titled "First Amended Notice of Filing Expert Affidavit." Neither of these documents contain any certification that copies of the report and the *curriculum vitae* filed with the court were served on Dr. Gordon, the Hospital, or their respective counsel. *See* Tex. R. Civ. P. 21a.

Dr. Gordon and the Hospital moved to dismiss Herrera's claim under section 74.351, alleging that they did not receive copies of the previously-filed expert report and *curriculum vitae* until October 5, 2004, when Herrera sent them both of the documents by facsimile transmission.

Herrera responded that, under the "mailbox rule" in Texas Rule of Civil Procedure 5, the expert report was "constructively delivered" to Dr. Gordon and the Hospital when Herrera placed the properly addressed report into the control of the United States Postal Service. *See* Tex. R. Civ. P. 5.[2] Herrera stated that he "was under the impression that the curriculum vitae had also been forwarded properly with same." Alternatively, Herrera argued that his claim should be allowed

---

[2] Rule 5 governs *filing* documents with the court's clerk, not *serving* documents to parties. *Compare* Tex. R. Civ. P. 5 *with* Tex. R. Civ. P. 21a (describing methods of service).

to proceed under equitable principles because the failure to comply with the requirements of section 74.351 was not his fault and because his attorney had attempted to comply with the statute in good faith. Herrera equated dismissal of his claim with the imposition of "death penalty sanctions" in the discovery context, *see* Tex. R. Civ. P. 215.2, and argued that it would be inappropriate for the court to impose such sanctions "as a result of the inadvertent failure to deliver documents to [Dr. Gordon and the Hospital] within the times set out in section 74.351."

Herrera's final argument in response to the motion to dismiss was that section 74.351's restrictions were unconstitutional. He urged that the requirements of section 74.351 and its lack of equity-based provisions—such as those available under chapter 74's predecessor, article 4590i[3]—constitute arbitrary and unreasonable restrictions on his claim, violate the equal protection and due process guarantees of the state and federal constitutions, and violate the Texas Constitution's open courts provision.

After a hearing on November 1, 2004, the district court granted Dr. Gordon's and the Hospital's motions to dismiss with prejudice.

Herrera filed a motion for new trial, relying on a November 30, 2004 affidavit from his counsel's secretary as evidence that Dr. Gordon and the Hospital were timely served with the expert's report. The secretary averred that "[o]n or about July 13, 2004, [she] drafted the Notice of Filing Expert Affidavit and [proceeded] to have same filed and mailed a copy via regular mail to opposing counsel." Her affidavit did not address service of the expert's *curriculum vitae*. The

---

[3] *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 ("article 4590i") *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351, 2003 Tex. Gen. Laws 847, 875-77.

record shows that Herrera obtained an "order for a setting" on his motion for new trial, but never obtained a hearing on it. Consequently, the motion for new trial was overruled by operation of law seventy-five days after the court signed its order of dismissal. *See* Tex. R. Civ. P. 329b(c).

Herrera brings two issues on appeal, arguing that the district court abused its discretion by dismissing the case and by failing to grant Herrera's motion for new trial.

## DISCUSSION

**Chapter 74**

Because the resolution of Herrera's issues depends upon his compliance with the statutory requirements governing health care liability claims, we begin by briefly reviewing those requirements. It is undisputed that Herrera's suit against Dr. Gordon and the Hospital is governed by chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-.507 (West 2005 & Supp. 2005). Chapter 74 requires claimants to provide expert reports in support of their suit, summarizing the expert's opinions regarding the applicable standard of care, how the claimant's physician or health care provider failed to meet that standard, and the causal relationship between that failure and the claimant's injury, harm, or damages. *Id.* § 74.351(r)(6). Under the version of section 74.351(a) applicable to this case, a claimant must serve the expert report with the *curriculum vitae* of each expert listed in the report, within 120 days from the date that the claim was filed:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date

4

for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2005).[4]

Because Herrera filed suit on May 14, 2004, his statutory deadline to serve the report and *curriculum vitae*—unless the parties agreed otherwise—was September 11, 2004. *See id.* § 74.351(a).

If a claimant fails to serve the report with the *curriculum vitae* on or before the statutory deadline, and the affected physician or health care provider files a motion to dismiss the claim under section 74.351(b), the court has no alternative but to dismiss the claim with prejudice:

> (b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a) [the 120-day period], the court, on the motion of the affected physician or health care provider, *shall*, subject to Subsection (c),[5] enter an order that:

---

[4] The most recent version of section 74.351(a) changed "not later than the 120th day after the date the *claim* was filed" to "not later than the 120th day after the date the *original petition* was filed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2005) (emphasis added). As this clarification does not affect our discussion, we will refer to the current version of the statute.

[5] Subsection (c) of section 74.351—which applies to reports that the court finds deficient in substance—is inapplicable here. *See*, *e.g.*, *Longino v. Crosswhite*, 183 S.W.3d 913, 918 n.2 (Tex. App.—Texarkana, 2006, no pet.) (noting that trial court could grant extension of time to claimants under section 74.351(c) because their report, although deficient, was timely filed). Subsection (c) states:

> If an expert report has not been served within the period specified by Subsection

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

*Id*. § 74.351(b) (emphasis added); *see also Boothe v. Dixon*, 180 S.W.3d 915, 918 (Tex. App.—Dallas 2005, no pet.). Thus, our threshold inquiry is whether Herrera complied with section 74.351(a) by serving his expert's report and *curriculum vitae* before the 120-day statutory deadline.

**Service of expert report under chapter 74**

In his first issue, Herrera argues that the district court abused its discretion by dismissing his case. He urges this Court to find that he complied with section 74.351(a) by "constructive delivery" of the expert report and *curriculum vitae* using regular mail. *See* Tex. R. Civ. P. 5. Alternatively, if section 74.351 does not authorize service by regular mail, Herrera suggests that the court should have granted a 30-day extension to him for his good-faith attempt at service, either under section 74.351(c) or due to "equitable considerations." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). Herrera's final assertion is that if section 74.351 prevents him from

---

(a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

6

curing his untimely service of an expert report and *curriculum vitae*, the statute must be unconstitutional. These propositions are without merit.

Herrera's "constructive delivery" argument is not supported by rule of civil procedure 5. Under rule 5, documents that are properly addressed, stamped and deposited in the mail on or before a filing deadline will be deemed timely filed, so long as the court's clerk receives them within ten days of their mailing. *See* Tex. R. Civ. P. 5.[6] Herrera's reliance on rule 5 is misplaced because the parties do not dispute that Herrera's expert report and *curriculum vitae* were *filed*. The crux of their dispute is whether copies of these filed documents were *served* on the parties in accordance with section 74.351(a).

The distinction between filing and serving an expert report and *curriculum vitae* is amplified for claims governed by chapter 74 because article 4590i claimants were merely required to "furnish" expert reports, but chapter 74 claimants must "serve" them.[7] *See*, *e.g.*, *Salazar v.*

_____

[6] Rule 5 states that "[i]f any document is sent to the proper clerk by first-class United States mail in an envelope or wrapper properly addressed and stamped and is deposited in the mail on or before the last day for filing same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed filed in time. A legible postmark affixed by the United States Postal Service shall be prima facie evidence of the date of mailing." Tex. R. Civ. P. 5.

[7] Article 4590i stated:

> Not later than the later of the 180th day after the date on which a health care liability claim is filed . . . the claimant shall, for each physician or health care provider against whom a claim is asserted:
>
> (1) *furnish* to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report. . . .

Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351, 2003

7

*Canales*, 85 S.W.3d 859, 863-64 (Tex. App.—Corpus Christi 2002, no pet.) (holding that expert report "furnished" by regular mail satisfied statutory requirements of article 4590i, section 13.01(d)).

"Serve" is not defined in section 74.351(a). The code construction act provides guidance, however. It states that "words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code Ann. § 311.011(b) (West 2005). "Serve" and "served" have distinct and familiar legal meanings under our rules of civil procedure. *See* Tex. R. Civ. P. 21a. The rules of civil procedure govern all actions of a civil nature in Texas courts unless a specific exception applies. Tex. R. Civ. P. 2. We agree with our sister court's conclusion that, given the applicability of the rules of civil procedure to health care liability claims and the use of "serve" and "served" in the statute, the legislature intended for claimants to comply with Texas Rule of Civil Procedure 21a to fulfill the requirements of section 74.351(a). *Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex. App.—Eastland 2005, pet. filed); *see also Quint v. Alexander*, No. 03-04-00819-CV, 2005 Tex. App. LEXIS 8868, at *7 (Tex. App.—Austin, Oct. 28, 2005, pet. denied) (mem. op.).

This construction comports with the legislature's change of the word "furnish" in section 13.01(d) to "serve" in section 74.351(a). *See* Tex. Gov't Code Ann. § 311.023 (West 2005) (allowing court to consider legislative history and former statutory provisions in construing statute). We presume that the legislature enacted the statutory change with knowledge of existing law. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to

Tex. Gen. Laws 847, 875-77 (emphasis added).

it."). Therefore, we may also presume its awareness of the meaning attached to the word "serve" in rule 21a.

Rule 21a authorizes four methods for service upon a party: (1) delivery in person, by agent, or by courier-receipted delivery; (2) certified or registered mail; (3) telephonic document transfer; or (4) such other manner as the court in its discretion may direct. Tex. R. Civ. P. 21a; *see also Quint*, 2005 Tex. App. LEXIS 8868, at *7-8. The party or attorney of record must certify to the court compliance with this rule in writing over signature and on the filed instrument. *Id*. A party who accomplishes service under rule 21a is entitled to a presumption of delivery. *Id*. ("A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any other person showing service of a notice shall be prima facie evidence of the fact of service.").

Herrera did not use any of the methods authorized by rule 21a to serve copies of the expert report and *curriculum vitae* on Dr. Gordon or the Hospital before the expiration of the statutory deadline. Herrera only contends that his expert's report and *curriculum vitae* were timely sent to opposing counsel by regular mail. We are persuaded by our sister court's holding that a party who sends documents to another by regular mail—which is not authorized by rule 21a—does not comply with the 120-day service requirement in section 74.351. *Kendrick*, 171 S.W.3d at 704; *see also Quint*, 2005 Tex. App. LEXIS 8868, at *6-8 (concluding that party's filing of expert report with district clerk was not tantamount to "serving" report upon another under section 74.351(a) because it was not one of rule 21a's authorized methods of service); *cf. Salazar*, 85 S.W.3d at 863-64 (holding that expert report "furnished" by regular mail satisfied statutory requirements of article 4590i, section 13.01(d)). Furthermore, because the record shows that the notices Herrera filed with

9

the district court did not include any certificate of service suggesting compliance with rule 21a,[8] Herrera was not entitled to any presumption of delivery.

Because section 74.351(a) contemplates service to parties consistent with the rules of civil procedure and because Herrera did not use any method of service authorized by rule 21a to deliver copies of his expert's report and *curriculum vitae* within 120 days of filing suit, we conclude that Herrera failed to prove compliance with the statutory deadline. We now consider whether any exception excuses his noncompliance and prevents dismissal of his claim.

**Exceptions for agreed extensions or deficient report**

Herrera argues that his failure to timely serve the report from his expert and the *curriculum vitae* should have been excused because it was unintentional and the result of accident or mistake. Herrera appears to allude to former section 13.01(g) in article 4590i. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 1995 Tex. Gen. Laws 985, 986 ("article 4590i"). The legislature repealed this provision when it enacted chapter 74. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 *with* article 4590i, § 13.01(g). A provision in section 74.351(a) does allow parties to extend the date for serving an expert report by written agreement but the record does not show that Herrera attempted to avail himself of this option. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

---

[8] In his motion for new trial, Herrera introduced an affidavit from his counsel's secretary, executed almost one month after the dismissal of Herrera's claim, as evidence that Dr. Gordon and the Hospital were timely served with the expert's report. But the secretary did not aver that the expert report was served in a method authorized by rule 21a, and she does not mention any service of the expert's *curriculum vitae*.

10

Herrera's next argument is that he should have been granted the 30-day extension in section 74.351(c). That section is inapplicable because it permits extensions for expert reports that the court finds deficient in substance, not for reports that are filed untimely. *See*, *e.g.*, *Longino v. Crosswhite*, 183 S.W.3d 913, 918 n.2 (Tex. App.—Texarkana 2006, no pet.). While Herrera suggests that it would have been equitable to grant him a 30-day extension because he attempted to serve the report in good faith, there is no such exception to the procedure set forth in section 74.351. *See Kendrick*, 171 S.W.3d at 705.

We conclude that Herrera did not establish the applicability of any exception to section 74.351(a) that would prevent dismissal of his claim for failure to serve an expert report and *curriculum vitae* upon Dr. Gordon and the Hospital on or before September 11, 2004. Having established that Herrera did not serve a copy of his expert's report upon Dr. Gordon and the Hospital as required by section 74.351 and that his failure to do so was not excused, we examine his constitutional challenges to the statute.

**Constitutional challenges to section 74.351**

Herrera argues that section 74.351 is unconstitutional, citing summarily to the due process and equal protection guarantees of the federal and state constitutions, as well as the open courts provisions of the Texas Constitution. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 13. He urges that the requirements of section 74.351 and its lack of equity-based provisions—such as those available under chapter 74's predecessor, article 4590i—constitute arbitrary and unreasonable restrictions on his claim. When reviewing the constitutionality of a statute, we begin with a

11

presumption that it is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *see also* Tex. Gov't Code Ann. § 311.021(1) (West 2005). The wisdom or expediency of the law is the legislature's prerogative, not ours. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995). The party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. *Walker*, 111 S.W.3d at 66.

In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Garcia*, 893 S.W.2d at 518 n.16; *see also City of Corpus Christi v. Public Util. Comm'n of Tex.*, 51 S.W.3d 231, 240-41 (Tex. 2001) (Owen, J., concurring). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* To sustain an "as applied" challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.*

Here, Herrera did not cite any authority or make any argument that would support a facial challenge to the constitutionality of section 74.351. He merely asserts that the restrictions section 74.351 imposes on claimants are "arbitrary and unreasonable." Because Herrera failed to demonstrate that section 74.351 always operates unconstitutionally, his challenge to the statute as facially unconstitutional is not persuasive.

Herrera did challenge the constitutionality of section 74.351, as applied to him, asserting that the current statute's lack of equitable provisions—previously available under section 13.01(g) of article 4590i—precludes him from curing defects and bars his claim.[9] Herrera urges that

---

[9] We note that Herrera's argument is flawed because section 74.351 does contain equitable provisions that would allow certain defects to be cured and the claim to proceed. For instance,

12

the requirements of section 74.351 constitute an arbitrary and unreasonable restriction on his claim, in violation of his constitutional rights to equal protection,[10] due process, and open courts.

With regard to Herrera's due process challenge, the supreme court has held that dismissal of a suit due to a claimant's failure to file a compliant expert report does not violate due process guarantees, even in the absence of notice of the report's noncompliance before the motion to dismiss. *Walker*, 111 S.W.3d at 66 (applying former article 4590i). The court reasoned that due process does not require "prior notice that the law is serious about a clearly stated consequence." *Id.*

Herrera's open courts argument is similarly misguided. A claimant who brings an open courts challenge has the burden of showing that the expert-report requirements actually prevented him from pursuing his claims. *McGlothlin v. Cullington*, 989 S.W.2d 449, 453 (Tex. App.—Austin 1999, pet. denied). The open courts provision is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an "impossible condition." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990). Herrera did not produce any evidence that the requirements of section 74.351 worked to prevent him from pursuing his claim. *See Marquez v. Providence Mem. Hosp.*, 57 S.W.3d 585, 595 (Tex. App.—El Paso 2001, pet. denied). In fact, Herrera's pleadings characterized the situation as the "result of the inadvert

---

subsection (a) permits the parties to extend the date for serving the expert's report by agreement. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

[10] Because Herrera presented no authority and failed to brief his equal protection argument, we need not address it. *See* Tex. R. App. P. 38.1(h).

13

failure to deliver documents." Thus, Herrera does not argue that it would have been impossible for him to have complied with section 74.351, only that he failed to do so.

Herrera's situation parallels that of the claimant in *Thoyakulathu v. Brennan*, who had filed expert reports but had not served them on other parties to the suit. No. 06-05-00070-CV, 2006 Tex. App. LEXIS 3308, at *15 (Tex. App.—Texarkana, April 27, 2006, no pet. h.) (mem. op.). When Brennan attempted to serve the reports by facsimile, on the last day to timely serve the reports, his facsimile machine malfunctioned. *Id*. at *3. The district court denied a motion to dismiss under 74.351(b). *Id*. Reversing the lower court's ruling, our sister court concluded that section 74.351 "need not provide exceptions that would encompass any conceivable complication in order to pass constitutional muster." *Id.* at *15. The court also overruled Brennan's contention that due process required section 74.351 to provide a claimant with additional extensions or a means of seeking relief from the consequences for failure to meet the statutory deadline. *Id*. Herrera's constitutional challenges are equally unpersuasive.

The district court's dismissal of Herrera's claim was mandatory under section 74.351(b). Herrera did not establish the applicability of any exception to the statutory procedure in 74.351(a) or demonstrate that the statute was unconstitutional. Accordingly, we overrule Herrera's first issue.

**Motion for new trial**

In his second issue, Herrera asserts that the district court abused its discretion by not granting his motion for new trial. Herrera obtained an "order for a setting" on January 18, 2005, but

did not obtain a hearing on his motion for new trial, and the court did not rule on it. Consequently, it was overruled by operation of law seventy-five days after the court signed its order of dismissal. *See* Tex. R. Civ. P. 329b(c).[11] We review the district court's decision granting or denying a motion for new trial for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987). When a motion for new trial is overruled by operation of law, as here, the question becomes whether the court abused its discretion by allowing the motion to be overruled. *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). A court abuses its discretion when it fails to correctly analyze or apply the law. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004); *Comanche Nation v. Fox*, 128 S.W.3d 745, 749 (Tex. App.—Austin 2004, no pet.). In matters committed to a district court's discretion, the test is whether the court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004).

In his motion for new trial, Herrera introduced an affidavit from his counsel's secretary, executed almost one month after the dismissal of Herrera's claim, as evidence that Dr. Gordon and the Hospital were timely served with his expert's report. Based on the recitals in the affidavit and under rule 21a, Herrera contends that he is entitled to a presumption that "a document properly sent was received by the addressee." *See* Tex. R. Civ. P. 21a.

---

[11] The court, however, retained plenary power to change its judgment until February 15, 2005, the 105th day after it signed the order of dismissal. *See* Tex. R. Civ. P. 329b(e). Herrera's motion for new trial could have been heard while the court retained plenary power.

Herrera's reliance on this affidavit is misplaced. The secretary testified that "[o]n or about July 13, 2004, [she] drafted the Notice of Filing Expert Affidavit and [proceeded] to have same filed and mailed a copy via regular mail to opposing counsel." She does not attest to any service of the expert's *curriculum vitae* on Dr. Gordon and the Hospital.[12] Nor does she aver that the expert report was served by any of the methods authorized by rule 21a. Her testimony confirms the fact that the documents were sent by regular mail only. Without a demonstration of compliance with service under rule 21a, there is no presumption of delivery.

Herrera's introduction of the affidavit for the first time in his motion for new trial suggests that he considered the affidavit "newly-discovered evidence," justifying a new trial. But evidence that was, or could have been, discovered using reasonable diligence is not newly-discovered. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983) (overruled on other grounds); *Patriacca v. Frost*, 98 S.W.3d 303, 307 (Tex. App.—Houston [1st Dist.] 2003, no pet.). With the exercise of reasonable diligence, Herrera could have presented the affidavit in response to the motions to dismiss or at the November 1 hearing. Herrera has not met his burden of showing that the trial court acted arbitrarily or unreasonably by allowing his motion for new trial to be overruled. Accordingly, we overrule Herrera's second issue.

---

[12] Additionally, we note that the expert's curriculum vitae was not filed with the district court until September 21, 2004—after the expiration of the 120-day deadline. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a).

16

**CONCLUSION**

Because Herrera failed to serve a copy of his expert's report upon Dr. Gordon and the Hospital as mandated by section 74.351 and because he did not demonstrate that section 74.351 is unconstitutional, we conclude that the district court was required to dismiss Herrera's claims with prejudice. We further conclude that the court did not abuse its discretion by allowing Herrera's motion for new trial to be overruled by operation of law. Accordingly, we affirm the district court's order of dismissal.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   June 23, 2006

17