In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00005-CV


______________________________




LYNN GOFORTH AND RONNIE GOFORTH, INDIVIDUALLY AND AS 

 NEXT FRIENDS OF EVELYN L. GOFORTH, A MINOR, Appellants


V.



J. COLTON BRADSHAW, M.D., BILL BUCKMAN, R.PH., 


AND BUCKMAN DRUG STORE, Appellees




 


On Appeal from the 76th Judicial District Court


 Titus County, Texas


Trial Court No. 33,582




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 Lynn and Ronnie Goforth claim that their infant daughter, Evelyn L. Goforth, was improperly
given certain medication, causing her to have seizures and to incur unnecessary medical expenses. 
The Goforths also claim that the medication was improperly administered due to negligence by her
doctor, J. Colton Bradshaw, her pharmacist, Bill Buckman, and Buckman's pharmacy, Buckman
Drug Store. After filing suit against Bradshaw and Buckman (1) and within the 120-day deadline
within which healthcare expert reports and curricula vitae (CVs) must be served, the Goforths mailed
reports and CVs to the district clerk and likewise sent copies to Bradshaw and Buckman. Bradshaw
and Buckman received them before the 120-day deadline. (2)

 After the deadline expired, Bradshaw and Buckman filed motions to dismiss the Goforths'
claims for failure to comply with the service requirement of Section 74.351 of the Texas Civil
Practice and Remedies Code. (3) The claimants did not file a response to the dismissal motions. After
a hearing, the trial court dismissed the Goforths' claims and awarded attorneys' fees to Bradshaw and
Buckman based on the dismissal.

 On appeal, the Goforths assert that the reports and CVs were "legally transmitted" to defense
counsel pursuant to Section 74.351; they emphasize the fact that counsel for both Bradshaw and
Buckman received the reports and CVs within the statutory deadline. Bradshaw and Buckman argue
that "service" under Section 74.351 requires strict adherence to the requirements of Rule 21a and
that, because the reports and CVs were not mailed by registered or certified mail, service has not
been accomplished under Section 74.351.

 Because Bradshaw and Buckman received the expert reports and CVs within the 120-day
deadline, and because the purposes of Section 74.351 and Rule 21a have thus been met, we hold that
the documents were timely served within the meaning of Section 74.351. Therefore, we reverse the
orders dismissing the Goforths' claims and awarding attorneys' fees to Bradshaw and Buckman, and
we remand this matter to the trial court for further proceedings.

 A trial court's decision to dismiss a case pursuant to Section 74.351 of the Texas Civil
Practice and Remedies Code is reviewed for an abuse of discretion. Intracare Hosp. N. v. Campbell,
222 S.W.3d 790, 794 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (citing Estate of Regis ex rel.
McWashington v. Harris County Hosp. Dist., 208 S.W.3d 64, 67 (Tex. App.--Houston [14th Dist.]
2006, no pet.)). When the trial court acts arbitrarily or unreasonably or without reference to any
guiding rules or principles, it abuses its discretion. Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex.
2003). Because the facts are not in dispute, the question of whether the service in this case satisfied
the requirements of Section 74.351(a) is a purely legal question. Questions of law are subject to a
de novo review. See Oak Park, Inc. v. Harrison, 206 S.W.3d 133, 137 (Tex. App.--Eastland 2006,
no pet.). (4)

 "Any legal term or word of art used in this chapter, not otherwise defined in this chapter,
shall have such meaning as is consistent with the common law." Tex. Civ. Prac. & Rem. Code
Ann. § 74.001(b) (Vernon 2005). This provision essentially restates the rule of statutory
construction that terms in a statute are to be given their plain meaning. Alvarez v. Thomas, 172
S.W.3d 298 (Tex. App.--Texarkana 2005, no pet.).

 Statutory construction is to be carried out in light of the Legislature's intent. See McIntyre v.
Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). In determining legislative intent, it is necessary to
"consider at all times the old law, the evil, and the remedy." Tex. Gov't Code Ann. § 312.005
(Vernon 2005).

 The "old law" is Article 4590i (predecessor to Chapter 74, Texas Civil Practice and Remedies
Code). Article 4590i required that an expert report be "furnished" within 180 days after the claim was
filed. (5) When the Legislature enacted Chapter 74, the term "furnish" was replaced with the term
"serve." Gutierrez, 237 S.W.3d at 872. It is presumed that, when this change was made, the
Legislature did so with knowledge of existing law. See id.; Acker v. Tex. Water Comm'n, 790 S.W.2d
299, 301 (Tex. 1990). In fact, the Gutierrez court determined, based on legislative intent, that the
term "serve" as used in Section 74.351 means service as contemplated by Rule 21a.

 In that case, the Houston First Court of Appeals dismissed a healthcare liability claim for
failure to comply with the service requirement of Section 74.351(a). Gutierrez is distinguished from
this case because, in that case, the claimants did not send an expert report (by any method) to the
hospital, one of the defendants in the case. The hospital did, in fact, obtain a copy of the report from
a co-defendant employee, who had been served. The Gutierrez court engaged in a thorough analysis
of the service requirements of Section 74.351(a). 

 The issue centered on whether claimants' failure to comply with Rule 21a service requirements
required dismissal of the claim against the hospital, even though the hospital admitted to having
received a copy of the expert report within the 120-day period. Gutierrez, 237 S.W.3d at 872. In
determining that the service requirements of Section 74.351(a) were not met, the Gutierrez court
quoted from Herrera v. Seton Northwest Hospital, 212 S.W.3d 452 (Tex. App.--Austin 2006, no
pet.), stating "[A] party who sends documents to another by [a process] which is not authorized by
rule 21a does not comply with the 120-day service requirement in section 74.351." Gutierrez, 237
S.W.3d at 872-73 (citing Herrera, 212 S.W.3d at 459). The Gutierrez court ultimately determined
that the Legislature's act of replacing the word "furnish" with the word "serve" would be of no
significance if the Legislature did not intend "serve" to mean service in compliance with Rule 21a. (6) 
Gutierrez found that, in order to effectuate the intent of Chapter 74 as a whole, and Section 74.351(a)
specifically, proper service of expert reports and CVs must occur under Rule 21a. Id. at 873. 
Accordingly, because the hospital was never served with a copy of the expert report as required by
Section 74.351(a), the trial court should have dismissed the claimants' claims against the hospital with
prejudice. 

 In the case of Herrera, the claimant argued compliance with Section 74.351(a) based on the
filing of his expert report with the trial court within the statutory deadline. As in this case, the
claimant's expert report was mailed via regular mail to the defendant (although the CV was not). 
Herrera, 212 S.W.3d at 455-56.

 The Herrera opinion offers a thorough analysis of the statute and its interplay with Rule 21a,
and highlights the distinction between "serving" and "furnishing" an expert report. Claimants who
"furnished" expert reports under Article 4590i were able to satisfy the statutory requirements of
Section 13.01(d) of Article 4590i by mailing the reports via regular mail. Id. at 458 (citing Salazar
v. Canales, 85 S.W.3d 859, 863-64 (Tex. App.--Corpus Christi 2002, no pet.)). The court further
noted the application of Rule 2 of the Texas Rules of Civil Procedure, which provides that the Rules
of Civil Procedure govern all civil actions, unless a specific exception applies. See Tex. R. Civ. P.
2. Given the distinction between "serving" and "furnishing" an expert report and the application of
Rule 2, the Herrera court held that the Legislature intended service under Section 74.351(a) to require
compliance with Rule 21a, thereby agreeing with the conclusion of its sister courts. Herrera, 212
S.W.2d at 459 (citing Kendrick v. Garcia, 171 S.W.3d 698, 704 (Tex. App.--Eastland 2005, pet.
denied)). 

 Under Section 74.351 of the Texas Civil Practice and Remedies Code, "service" of expert
reports and CVs means the same thing as "service" under Rule 21a of the Texas Rules of Civil
Procedure. Amaya v. Enriquez, No. 08-07-00086-CV, 2009 Tex. App. LEXIS 5902, at *6-7 (Tex.
App.--El Paso July 31, 2009, no pet. h.); Poland v. Ott, 2009 Tex. App. LEXIS 3766 (Tex.
App.--Houston [1st Dist.] Jan. 22, 2009, pet. filed); Gutierrez, 237 S.W.3d at 872; Herrera, 212
S.W.3d at 459; Kendrick, 171 S.W.3d at 704.

 Here, the pivotal issue is whether the Goforths' actual and direct delivery of the documents
to Bradshaw and Buckman by regular mail, and Bradshaw's and Buckman's acknowledged receipt of
those documents before the statutory deadline, accomplished that "service" under Rule 21a. The
Goforths argue that the actual delivery ought to suffice, while Bradshaw and Buckman argue that,
because delivery by regular mail does not comply with Rule 21a, there has been no service of the
reports and CVs under Section 74.351, thus mandating the dismissal of the Goforths' claims.

 The resolution of this dispute turns on the meaning of Rule 21a. To comply with the express
terms of Rule 21a, a notification or document

 may be served by delivering a copy to the party to be served, or the party's duly
authorized agent or attorney of record, as the case may be, either in person or by agent
or by courier receipted delivery or by certified or registered mail, to the party's last
known address, or by telephonic document transfer to the recipient's current telecopier
number, or by such other manner as the court in its discretion may direct. . . .

Tex. R. Civ. P. 21a. The rule, thus, first sets out the persons to whom such a notice may be delivered,
that is, the party, the party's authorized agent, or the party's attorney of record. That part of the rule
does not figure into this dispute. The rule then sets out a list of various methods by which service on
one of the three recipients may be accomplished: in person, by agent, by courier receipted delivery,
by certified or registered mail (to the recipient's last known address), or by facsimile (to the recipient's
current facsimile number). That part of the rule is at the heart of this dispute. We note that the rule
does not expressly limit who may serve as an agent to deliver the notification.

 The rule's purpose is to achieve actual notice and to set up presumptions to use in disputes
about whether notice was achieved. See Netherland v. Wittner, 662 S.W.2d 786, 788 (Tex.
App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.); Hill v. W. E. Brittain, Inc., 405 S.W.2d 803, 807
(Tex. Civ. App.--Fort Worth 1966, no writ).

 Our sister court of appeals in Beaumont recently had a case similar to the one before us. See
Spiegel v. Strother, 262 S.W.3d 481 (Tex. App.--Beaumont 2008, no pet.). In Spiegel, a copy of the
expert report and CV was mailed by priority mail to the defendant doctor, and was received by the
doctor, within the statutory deadline. (7) The doctor sought to have the claim dismissed for lack of
proper service, but the trial court refused to dismiss. On interlocutory appeal, the appellate court
agreed that the doctor had been served within the meaning of Rule 21a--and, thus, within the
meaning of Section 74.351--because he had received from the claimant a copy of the report and CV
within the 120-day deadline, although the manner of delivery was not one of those listed in Rule 21a. 
That court noted that no cases cited by the doctor involved the acknowledged, timely receipt of the
report and CV from a claimant. Id. at 485. Here, we have virtually the same factual situation. True,
in Spiegel, the mailing was by priority mail, rather than regular mail, but we see no relevant
distinction there; neither method is listed in Rule 21a. Also, in Spiegel, a certificate of service had
been executed; here, there is no such certificate. Though a certificate of service is required by Rule
21a and is recognized as presumptively establishing service, here we have acknowledged, actual
delivery. We believe that is the key, and we agree with Spiegel that service was accomplished in both
cases by virtue of that actual delivery.

 In other settings, serving notice of a trial setting by regular mail complies with Rule 21a,
where actual receipt of the notice is proven and no harm resulted from the failure to serve notice by
registered or certified mail. Netherland, 662 S.W.2d at 787-88 (trial-setting notice also given by
telephone); see Hill, 405 S.W.2d at 807.

 For the foregoing reasons, we reverse the order, which dismissed the Goforths' claims and
awarded Bradshaw and Buckman their attorneys' fees, and remand this cause to the trial court for
further proceedings in accordance with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 10, 2009

Date Decided: September 4, 2009
1. In this opinion, we refer to Buckman and his pharmacy, collectively, as Buckman.
2. Healthcare liability claimants are required to serve each defendant, or attorney of record,
with one or more expert reports and CVs within 120 days after the date suit is filed. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008). Because the Goforths' suit was filed
May  7,  2008,  the  deadline  for  service  of  the  reports  and  CVs  was  September  4,  2008.  On
August 20, 2008, the reports and CVs from Gary Foster, a pharmacist, and Keith E. Miller, a doctor,
were mailed to the district clerk, and copies were mailed to Bradshaw and Buckman. While the
transmittal letter to the clerk showed a copy had been sent to defense counsel, there was no
indication that enclosures were included. The letter to the district clerk did not contain a certificate
of service and was the sole document indicating transmission of the Goforths' expert reports and CVs
to defense counsel. At a subsequent hearing, however, counsel for both Bradshaw and Buckman
testified to having received the reports and CVs before the deadline.

 Dana Morgan, counsel for Bradshaw, testified that her law firm received, by regular mail,
a copy of the letter to the clerk, as well as the reports and CVs. James Lawrence, counsel for
Buckman, testified that he, too, received the claimants' expert reports and CVs by regular mail. Both
Morgan and Lawrence testified that they received the reports and CVs before the expiration of the
statutory deadline. 
3. Neither the sufficiency of the expert reports nor the qualifications of the experts have been
challenged by Bradshaw or Buckman. The sole basis urged for dismissal was the failure to serve the
reports and CVs in accordance with Rule 21a of the Texas Rules of Civil Procedure. See Tex. R.
Civ. P. 21a.
4. "[A] trial court has no discretion in determining what the law is, which law governs, or how
to apply the law." Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237 S.W.3d 869, 871 n.1
(Tex. App.--Houston [1st Dist.] 2007, pet. denied); see also Buck v. Blum, 130 S.W.3d 285, 290
(Tex. App.--Houston [14th Dist.] 2004, no pet.) (de novo standard of review applies in reviewing
interpretation of healthcare liability statute).
5. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d), repealed by Act of 2003, 78th Leg., R.S.,
ch. 204, § 10.09, 2003 Tex. Gen. Laws 884. Current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001 (Vernon 2005).
6. Gutierrez references the historical note to Section 74.001 of the Texas Civil Practice and
Remedies Code, which included findings that the number of healthcare liability claims increased
inordinately since 1995, that a medical malpractice crisis existed in Texas, and that this crisis had
caused a material adverse effect on the delivery of medical and health care in Texas. Gutierrez, 237
S.W.3d at 872-73. The Legislature indicated that the purpose of Chapter 74 included reducing the
excessive frequency, severity, and costs of healthcare liability claims. Id.
7. Earlier, the plaintiff had also caused a copy of the report to be delivered to the doctor's
office. The person delivering it handed it to "the person behind the window." The doctor maintained
that the documents were not delivered to an agent authorized by him to accept service. See Spiegel,
262 S.W.3d at 482.



, though, that the complaining party must still adequately preserve any asserted
error with timely, proper objections. See Jackson v. State, 992 S.W.2d 469, 480 n.12 (Tex. Crim.
App. 1999). 

 We will only address arguments to which Barrios lodged some form of objection. First,
Barrios complains of the following:

 [By the State]: Now, you ever wonder why . . . we have to have so many
sheriff's deputies and patrol cars; how many houses gets [sic] broken into; how many
forged checks businesses receive; how many people are injured and maimed every
day; how many families are destroyed; how many people wonder, "What happened
to my children? I was [a] good parent. Look at my kid, he's hitting that crack pipe."


 It's because people like Delio Barrios, professional drug traffickers, bring
dope into this country.


 Now, I appreciate his wife, this lady that came, and the fact that she's got a
five-year-old daughter. I represent the five-year-old daughters in this county, and I'm
here to tell you the evidence in this case cannot support a probated sentence
. . . there's only one verdict that will send a message to people. 


 I don't care what term of years you would give. If you were to give eight
years, ten years, 12 years, that means nothing in this case. That's easy time. 

 

 The Judge has instructed you here in your verdict form right down here on the
bottom of page 3, it says, "Under the law applicable in this case, the defendant, if
sentenced to a term of imprisonment, will not become eligible for parole until the
actual time served equals one fourth of the sentence." 

 

 He'll be eligible for parole after one fourth of the sentence. If were you [sic]
to give ten years, that's two and a half years he'll be eligible for parole. 


 How can you send a message? There's a telephone out there in that lobby on
that wall, and what you do here is important. All these other dozens of drug cases,
all these other dozens of drug laundering cases throughout East Texas --


 Barrios objected to "improper jury argument"; the trial court sustained the objection and
instructed the jury to disregard the comment regarding the drug issues. The trial court then denied
Barrios's motion for a mistrial. In his brief, Barrios does not specify exactly what error we should
find in the above passage. Rather, he quotes almost a page-length section of the State's argument,
to which he only objected on the ground of "improper jury argument." He does not explain what
specific part of the State's argument was improper or why he believes it to have been improper. 
Some of the quoted argument could qualify as a plea for law enforcement; some addresses part of
the court's charge; some asks the jury to "send a message," which may fall within or without the
limitations of a plea for law enforcement. (7) Barrios has failed to articulate specifically what part of
the State's argument upon which his point of error is based. 

 Barrios also complains of his overruled objection to the State's statement, "That van was
traveling back and forth down Interstate 30, and just by the grace of God, one highway patrolman
who was extremely diligent." This is a reference to a summation of evidence adduced at trial or to
an inference which can be deduced from the evidence presented, a proper area of argument.

 In the State's closing rebuttal, Barrios objected to several comments which made reference
to Barrios's supposed role in the illegal narcotics problem of Morris County. Among these were: 
"Poor Delio. I'm not trying to blame Delio for all the drug problems in Morris County. I'm blaming
Delio and people like Delio, and we're going to send a message to people like Delio." Barrios
objected, claiming this was "improper jury argument to send a message to other people who are
unknown." The trial court overruled the objection. Reviewing the whole of the State's argument as
taken in its entirety, we find this to have been a proper plea for law enforcement.

 The State next said, "What this Court does and what this jury does affects everybody else,
and the message that you can send is that you want to stand up and to stop this flow of drugs. All
that it takes --." Barrios lodged an objection that "it's improper jury argument about stopping the
flow of drugs. That's not what this case is about." We cannot disagree with the trial court's
overruling of the objection; although Barrios's conviction was for money laundering, the State's
theory of prosecution, supported by numerous evidentiary references throughout the guilt/innocence
phase, pointed to drug trafficking as the source of the money hidden in the van. Thus, it could be
construed the State was referring to evidence which had been offered at trial. 

 Later, in its closing rebuttal, the State said, "Give him his flight papers. The only way that
justice can be done in the case is for Delio Barrios to be assessed 20 years and a $10,000 fine. He
is old enough to know better. He's a professional drug trafficker, and he got caught. Now that he's
caught, it's time for him to be punished." Barrios objected, "I'm going to object to him classifying --
this is a case about money laundering, not about anything else." As with the previous comment, the
flow of drugs and money was the nexus of the criminal activity the State alleged and needed to prove
in order to meet the elements of money laundering. We find no error in the trial court having
overruled this objection.

 Barrios objected to the State's statement that, "All that it takes for evil to triumph is for good
men and women to do nothing. This is your one day, your one hour, that you have to speak up and
make --." However, the trial court answered the objection by saying, "This is an argument presented
by the State." Barrios did not obtain an adverse ruling, and thereby failed to preserve any complaint
for appellate review. 

 Finally, the State said, "Perhaps this former federal prosecutor that he hired to come up here
and defend him believes that trafficking in drugs for money is not evil." Barrios objected to
"improper jury argument" to "putting Counsel in the jury argument." The trial court sustained this
objection and granted Barrios's request that the jury be instructed to disregard; the court then denied
Barrios's request for a mistrial. When the trial court sustains an objection to jury argument and
instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue on appeal
becomes whether the trial court abused its discretion in denying the requested mistrial. Hawkins v.
State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). As with other matters in which abuse of
discretion is the issue, we will uphold the trial court's ruling if it was within the "zone of reasonable
disagreement." Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) (citing Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). The Hawkins court approved
the balancing of three factors for this kind of situation: (1) the severity of the misconduct (i.e., its
prejudicial effect on the jury), (2) the curative measures which were taken, and (3) the certainty of
the punishment which would have been assessed absent the misconduct. Hawkins, 135 S.W.3d at
77. Barrios does not address any of this analysis in his brief. Taken in context of the whole
argument, we do not find the potential prejudicial impact on the jury to have been significant nor
would we characterize the State's misconduct, to the extent any existed, as severe. The trial court's
instruction to disregard is presumed effective and generally cures any error. Dinkins v. State, 894
S.W.2d 330, 357 (Tex. Crim. App. 1995); Losada v. State, 721 S.W.2d 305, 314 (Tex. Crim. App.
2006); Nielsen v. State, 836 S.W.2d 245, 249 (Tex. App.--Texarkana 1992, pet. ref'd). An
instruction to disregard the argument generally cures any error. Castillo v. State, 939 S.W.2d 754,
762 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). As for the certainty of the same punishment
being assessed absent the State's misconduct, it is true Barrios had no prior criminal history. 
However, he received less than the maximum amount of punishment possible. He admitted to being
in the country illegally and indicated that he planned to use the money which was found to illegally
bring his parents to America. As he makes no attempt to argue why he would have received a lower
sentence, and reviewing the record as a whole, we find the trial court was within its discretion to
deny Barrios's request for a mistrial. His fourth point of error is overruled. 

Point 5) Claim of Sentencing Error as Beyond the Scope of Permitted Punishment 

 Barrios's fifth point of error claims his fifteen-year sentence, in the punishment range of a
second-degree felony, was inappropriate. He claims that money laundering with funds of more than
$20,000.00 but less than $100,000.00 is a third-degree felony. See generally Tex. Penal Code
Ann. §§ 12.33,12.34 (Vernon 2003), § 34.02. Barrios was arrested on June 7, 2005, before the
effective change in the law. Money laundering in the stated amount of funds range was changed
from a second- to third-degree felony as of September 1, 2005; the proper sentencing standard was
applied. See Tex. Penal Code Ann. § 34.02(e)(2). (8) We overrule this point of error. 

Points 6-9) Denial of Barrios's Motion to Suppress

 In four points of error, Barrios claims the trial court erred in denying his motion to suppress
evidence obtained as a result of Trooper Hogue's traffic stop and subsequent investigation. Barrios
claims that (1) the initial traffic stop was unconstitutional; (2) after the traffic stop, Barrios was
illegally detained; (3) Hogue's search of the van was without a warrant and not permitted by any of
the exceptions to the Fourth Amendment's search warrant requirement; and (4) even if Barrios had
given Hogue consent to search the van, Hogue's search exceeded the scope of the consent as given. 
We find it expedient to address these contentions of error together. 

 A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). In reviewing a trial court's ruling
on a motion to suppress, appellate courts must give great deference to the trial court's findings of
historical facts as long as the record supports the findings. Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial
court is the exclusive fact-finder, the appellate court reviews evidence adduced at the suppression
hearing in the light most favorable to the trial court's ruling and sustains the trial court's ruling if it
is reasonably correct on any theory of law applicable to the case. Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex. Crim. App. 2000). 

 At the suppression hearing, Trooper Hogue testified that he pulled Barrios over after
witnessing Barrios commit two traffic violations: failing to signal a lane change and making said
lane change unsafely. Hogue said that as he was turning around on Interstate 30, he saw Barrios's
westbound van make an "abrupt movement from the inside lane to the outside lane so close in front
of a truck tractor that I saw the truck tractor apply his brakes." When changing lanes on a multi-lane
road, a driver cannot change lanes unless such can be accomplished "safely." Tex. Transp. Code
Ann. § 545.060 (Vernon 1999). Further, a driver is required to provide a signal before changing
lanes. Tex. Transp. Code Ann. § 545.104 (Vernon 1999). Violation of a traffic law in an officer's
presence is sufficient authority for an initial stop. Armitage v. State, 637 S.W.2d 936, 939 (Tex.
Crim. App. 1982); Griffin v. State, 54 S.W.3d 820, 822-23 (Tex. App.--Texarkana 2001, pet. ref'd). 
At a suppression hearing, the trial court observes the testimony and demeanor of the witnesses and
is in a better position than the appellate court to judge the credibility of the witnesses. See Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citing Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990)). Therefore, we do not engage in our own factual review. Rather, we view
the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial
court's ruling and sustain the ruling if it is sufficiently supported by the evidence and is correct on
any theory of law applicable to the case. Id. It was within the trial court's discretion to believe
Hogue's explanation for having stopped Barrios and to find that Hogue had a legitimate reason to
conduct a traffic stop. 

 As pertains to Barrios's claim that the stop amounted to an illegal detention, we find the law
does not support this argument. An officer may 1) require the detainee to identify himself and
produce a valid driver's license and proof of insurance, and 2) detain the individual for a period of
time reasonably sufficient to check for outstanding warrants. Kothe v. State, 152 S.W.3d 54, 63-64
(Tex. Crim. App. 2004); Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.--Amarillo 2003, pet.
ref'd). He may also ask the driver if he possesses illegal contraband and solicit voluntary consent
to search the vehicle once the purpose of a traffic stop has been effectuated. Strauss, 121 S.W.3d
at 491; James v. State, 102 S.W.3d 162, 172-73 (Tex. App.--Fort Worth 2003, pet. ref'd). 
Requesting such consent is not an unlawful seizure, and neither probable cause nor reasonable
suspicion is required for the officer to ask. James, 102 S.W.3d at 173. Nor must the officer tell the
individual that he is free to leave after the purpose of the stop is completed. Vargas v. State, 18
S.W.3d 247, 252 n.1 (Tex. App.--Waco 2000, pet. ref'd). (9)

 Hogue's vehicle was equipped with a videotape recorder. The videotaped transaction shows
Hogue pulling the van over and the interview with Barrios, as well as Hogue's search of the van. The
videotape contains no audio portion; Hogue testified that he failed to check the battery on his
microphone (which transmits the sound to the camera) at the beginning of his shift on the day in
question. Hogue admitted this was a mistake on his part. While the State played the videotape for
the jury, Hogue provided narration. From this recitation in the reporter's record and watching the
videotape, we are able to ascertain that no more than ten minutes intervened between the beginning
of the traffic stop and Barrios's consent to search the van. In light of the circumstances, especially
Barrios's lack of a driver's license and his not having been listed as among the authorized insured
drivers of the van, we find this was a reasonable amount of time for Hogue to have detained and
questioned Barrios and then to have requested a consent to search the vehicle. 

 We disagree with Barrios's contention that the traffic stop was unconstitutional, warrantless,
and not within any of the exceptions to the requirement for a warrant. A search conducted with the
consent of the suspect is an exception to the Fourth Amendment's warrant requirement. Schneckloth
v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). 
Barrios does not assert that his consent was not voluntarily given. We find that the traffic stop was
constitutional and did not amount to an illegal detention and that Barrios's consent obviated the need
to obtain a warrant for the search of the van. We overrule these points of error.

 Barrios claims that when Trooper Hogue used a drill to remove a panel inside the van,
thereby revealing two bricks of cash, each containing $18,000.00, such act exceeded the scope of any
consent given by Barrios. A suspect may limit the scope of the search to which he consents. Florida
v. Jimeno, 500 U.S. 248, 251 (1991); Simpson, 29 S.W.3d at 330. The scope of the consent is
defined by what a typical reasonable person would have understood by the exchange between the
officer and the suspect. Simpson, 29 S.W.3d at 330. Absent an explicit limitation by the person,
consent to search inside a vehicle includes consent to search containers that could contain the object
of the search. Jimeno, 500 U.S. at 251; Vargas, 18 S.W.3d at 254. Hogue said he saw pink housing
insulation within an air-conditioner vent and that some of the screws in the area seemed to have been
tampered with or damaged. He testified that this raised his suspicions; thus, it was logical for him
to remove the panel. Further, Barrios points to nothing in the record to indicate he ever limited the
scope of his consent. We overrule this point of error. 

Point 10) State Failed to Turn Over Police Reports of All Officers Involved 

 Barrios complains in his tenth point of error that his "due process rights were violated when
the State failed to turn over all reports that were in the custody of the State. Moreover, there were
no photographs turned over to appellant." Barrios does not specifically identify what was not turned
over to him. He simply says, "Despite the fact that all Motions were granted by the trial court, the
State did not disclose all of the information." Arguably, this point is inadequately briefed. See Tex.
R. App. P. 38.1. The only objection or complaint lodged by Barrios regarding any law enforcement
reports arose when Barrios was cross-examining Trooper Dalme, the canine handler, who made
reference to a short report he had made, explaining that he makes one each time he deploys his dog
for a search. This report was not provided to the State because Dalme was not the officer reporting
this arrest. When Barrios's attorney asked to see this report, Dalme had to retrieve it from another
place, but immediately complied. Although Barrios cites Brady v. Maryland, (10) he makes no effort
to analyze or brief the issue; he does not point out what reports the State failed to supply, the use to
which the report could have been put if it had been supplied earlier, or demonstrate any material
evidence contained in the report which was not otherwise provided. As for Barrios's complaint that
he received no photographs in discovery, none were admitted into evidence. This point of error is
overruled. 

Point 11) Police Testimony as Expert Witnesses

 As with point of error 10, this point contains one paragraph of general citations and then a
paragraph in which error is claimed but there is no argument, analysis, or citation to either the record
or to caselaw supporting the point of error. Barrios claims to have been told at a pretrial hearing that
the State would present no expert witnesses, but that the State's Department of Public Safety
witnesses did, in fact, testify as experts. This point is inadequately briefed. See Tex. R. App. P. 38.1. 

 In spite of the inadequacy of the briefing on this point, we observe that none of the troopers'
testimony amounted to expert testimony. When Barrios did object to Trooper Hogue's testimony as
having taken on the characteristics of expert testimony, the trial court ruled that he was not at that
time finding Hogue to be an expert providing expert testimony; rather, Hogue's testimony was being
admitted as being based on Hogue's personal experience. Hogue testified about why he suspected
Barrios and arrested him for the offense of money laundering: (1) traveling on the interstate and
direction of travel; (2) evidence at the scene did not match Barrios's story of being a painter returning
from Tennessee; (3) money secreted away in a car; (4) a newly purchased vehicle and insurance;
(5) the tale of having traveled a long distance to paint for just two days; and (6) inconsistency in
much of Barrios's representations. This opinion evidence was based on the witness's experience. 
A witness can testify in the form of an opinion under Rule 701 of the Texas Rules of Evidence if the
opinions or inferences are (a) rationally based on his perceptions and (b) helpful to the clear
understanding of the testimony or the determination of a fact in issue. Osbourn v. State, 92 S.W.3d
531, 535 (Tex. Crim. App. 2002) (citing Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App.
1997)). "Since Rule 701 requires the testimony to be based on the witness's perception, it is
necessary that the witness personally observed or experienced the events about which he or she is
testifying.  . . . Thus, the witness's testimony can include opinions, beliefs, or inferences as long as
they are drawn from his or her own experiences or observations." Id. (citation omitted). The
admission or exclusion of evidence is reviewed for an abuse of discretion. Montgomery, 810 S.W.2d
at 391.

 We overrule this allegation of error. 

 We affirm the trial court's judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: October 24, 2007

Date Decided: November 16, 2007


Do Not Publish

1. See Tex. Penal Code Ann. § 34.02 (money laundering). 
2. 143 S.W.3d 565 (Tex. App.--Dallas 2004, pet. ref'd), cert. denied, 126 S.Ct. 2978 (2006). 
3. Granado v. State, No. 07-05-0444-CR, 2006 Tex. App. LEXIS 7589 (Tex. App.--Amarillo
Aug. 25, 2006, no pet.) (mem. op., not designated for publication).
4. See Bell v. Tex. Dep't of Crim. Justice--Institutional Div., 962 S.W.2d 156, 157 n.1 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied).
5. Barrios, in his closing argument, had impugned Trooper Hogue for having failed to check
the battery in his voice recorder on the day of the arrest, which resulted in a lack of audio on the
videotape of the traffic stop and the conversation between Hogue and Barrios. The attorney faulted
Hogue for not "even hav[ing] enough get-up to put a battery in so we can hear what's going on." 
Hogue admitted he failed to check the audio portion of his video recorder before his shift on the day
in question. Answering opposing counsel's argument is a permissible area of jury argument. 
Alejandro v. State, 493 S.W.2d 230, 231-32 (Tex. Crim. App. 1973).
6. A point of error that contains more than one specific ground of error is a multifarious point
of error and we could refuse to consider it. See Marcum v. State, 983 S.W.2d 762, 767 n.1 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd) (citing Bell, 962 S.W.2d at 158 n.1). However, a court
may consider multifarious points of error if the court can determine, with reasonable certainty, the
alleged error about which the complaint is made. McCain v. State, 995 S.W.2d 229, 243 n.7 (Tex.
App.--Houston [14th Dist.] 1999, pet. ref'd, untimely filed). As we are able to determine the errors
about which appellant complains, we will, in the interest of justice, consider those complaints.
7. Compare Pennington v. State, 171 Tex. Crim. 130, 345 S.W.2d 527 (1961); Cox v. State,
157 Tex. Crim. 134, 247 S.W.2d 262 (1952), where the Texas Court of Criminal Appeals reversed
based on prosecutor's arguments that the respective communities expected or demanded the jury to
assess lengthy sentences, McGee, 774 S.W.2d at 240, which found the prosecutor's argument asking
the jury "to send a message to the community that it will not tolerate violence within its own
community . . . were not an appeal based on unproven sentiments of the community which this Court
has held to be reversible error." 
8. Act of May 30, 2005, 79th Leg., R.S., ch. 1162, § 2, 2005 Tex. Gen. Laws 3802, 3803.
9. See also McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (an officer may
lawfully stop a motorist who commits a traffic violation); Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992) (If an officer has a reasonable basis for suspecting that a person has
committed a traffic offense, the officer may legally initiate a traffic stop. The officer also may detain
a person who commits a traffic violation.). The continued detention and request to search a
detainee's car following a traffic stop is reasonable when consent is given. See Ohio v. Robinette,
519 U.S. 33, 38-40 (1996); Simpson v. State, 29 S.W.3d 324, 328 (Tex. App.--Houston [14th Dist.]
2000, pet. ref'd).
10. 372 U.S. 83, 87-88 (1963).